## McCRAY *v.* ILLINOIS.

No. 159.   Argued January 10–11, 1967.—Decided March 20, 1967.

*R. Eugene Pincham* argued the cause for petitioner. With him on the briefs were *Sam Adam, Charles B. Evins* and *Earl E. Strayhorn.*

*John J. O'Toole,* Assistant Attorney General of Illinois, argued the cause for respondent. With him on the brief were *William G. Clark,* Attorney General, and *Richard A. Michael,* Assistant Attorney General.

*Thomas C. Lynch,* Attorney General, *William E. James,* Assistant Attorney General, and *Evelle J. Younger* filed a brief for the State of California, as *amicus curiae.*

MR. JUSTICE STEWART delivered the opinion the Court.

The petitioner was arrested in Chicago, Illinois, on the morning of January 16, 1964, for possession of narcotics. The Chicago police officers who made the arrest found a package containing heroin on his person and he was indicted for its unlawful possession. Prior to trial he filed a motion to suppress the heroin as evidence against him, claiming that the police had acquired it in an unlawful search and seizure in violation of the Fourth and Fourteenth Amendments. See *Mapp* v. *Ohio,* 367 U. S. 643. After a hearing, the court denied the motion, and the petitioner was subsequently convicted upon the evidence of the heroin the arresting officers had found in his possession. The judgment of conviction was affirmed by the Supreme Court of Illinois,[1] and we granted certiorari to consider the petitioner's claim that the hearing on his motion to suppress was constitutionally defective.[2]

The petitioner's arrest occurred near the intersection of 49th Street and Calumet Avenue at about seven in the morning. At the hearing on the motion to suppress, he testified that up until a half hour before he was arrested he had been at "a friend's house" about a block away,

[1] 33 Ill. 2d 66, 210 N. E. 2d 161.
[2] 384 U. S. 949.

that after leaving the friend's house he had "walked with a lady from 48th to 48th and South Park," and that, as he approached 49th Street and Calumet Avenue, "[t]he Officers stopped me going through the alley." "The officers," he said, "did not show me a search warrant for my person or an arrest warrant for my arrest." He said the officers then searched him and found the narcotics in question.[3] The petitioner did not identify the "friend" or the "lady," and neither of them appeared as a witness.

The arresting officers then testified. Officer Jackson stated that he and two fellow officers had had a conversation with an informant on the morning of January 16 in their unmarked police car. The officer said that the informant had told them that the petitioner, with whom Jackson was acquainted, "was selling narcotics and had narcotics on his person and that he could be found in the vicinity of 47th and Calumet at this particular time." Jackson said that he and his fellow officers drove to that vicinity in the police car and that when they spotted the petitioner, the informant pointed him out and then departed on foot. Jackson stated that the officers observed the petitioner walking with a woman, then separating from her and meeting briefly with a man, then proceeding alone, and finally, after seeing the police car, "hurriedly walk[ing] between two buildings." "At this point," Jackson testified, "my partner and myself got out of the car and informed him we had information he had narcotics on his person, placed him in the police vehicle at this point." Jackson stated that the officers then searched

---

[3] The weather was "real cold," and the petitioner testified he "had on three coats." In order to conduct the search, the arresting officers required the petitioner to remove some of his clothing, but even the petitioner's version of the circumstances of the search did not disclose any conduct remotely akin to that condemned by this Court in *Rochin* v. *California*, 342 U. S. 165.

the petitioner and found the heroin in a cigarette package.

Jackson testified that he had been acquainted with the informant for approximately a year, that during this period the informant had supplied him with information about narcotics activities "fifteen, sixteen times at least," that the information had proved to be accurate and had resulted in numerous arrests and convictions. On cross-examination, Jackson was even more specific as to the informant's previous reliability, giving the names of people who had been convicted of narcotics violations as the result of information the informant had supplied. When Jackson was asked for the informant's name and address, counsel for the State objected, and the objection was sustained by the court.[4]

Officer Arnold gave substantially the same account of the circumstances of the petitioner's arrest and search, stating that the informant had told the officers that the petitioner "was selling narcotics and had narcotics on his

---

[4] "Q. What is the name of this informant that gave you this information?

"Mr. Engerman: Objection, Your Honor.

"The Court: State for the record the reasons for your objection.

"Mr. Engerman: Judge, based upon the testimony of the officer so far that they had used this informant for approximately a year, he has worked with this individual, in the interest of the public, I see no reason why the officer should be forced to disclose the name of the informant, to cause harm or jeopardy to an individual who has cooperated with the police. The City of Chicago have a tremendous problem with narcotics. If the police are not able to withhold the name of the informant they will not be able to get informants. They are not willing to risk their lives if their names become known.

"In the interest of the City and the law enforcement of this community, I feel the officer should not be forced to reveal the name of the informant. And I also cite People vs. Durr.

"The Court: I will sustain that.

"Mr. Adam: Q. Where does this informant live?

"Mr. Engerman: Objection, your Honor, same basis.

"The Court: Sustained."

person now in the vicinity of 47th and Calumet." The informant, Arnold testified, "said he had observed [the petitioner] selling narcotics to various people, meaning various addicts, in the area of 47th and Calumet." Arnold testified that he had known the informant "roughly two years," that the informant had given him information concerning narcotics "20 or 25 times," and that the information had resulted in convictions. Arnold too was asked on cross-examination for the informant's name and address, and objections to these questions were sustained by the court.

There can be no doubt, upon the basis of the circumstances related by Officers Jackson and Arnold, that there was probable cause to sustain the arrest and incidental search in this case. *Draper* v. *United States,* 358 U. S. 307. Unlike the situation in *Beck* v. *Ohio,* 379 U. S. 89, each of the officers in this case described with specificity "what the informer actually said, and why the officer thought the information was credible." 379 U. S., at 97. The testimony of each of the officers informed the court of the "underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant . . . was 'credible' or his information 'reliable.'" *Aguilar* v. *Texas,* 378 U. S. 108, 114. See *United States* v. *Ventresca,* 380 U. S. 102. Upon the basis of those circumstances, along with the officers' personal observations of the petitioner, the court was fully justified in holding that at the time the officers made the arrest "the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. *Brinegar* v. *United States,* 338 U. S. 160, 175–176; *Henry* v. *United States,* 361 U. S. 98, 102." *Beck*

v. *Ohio, supra,* at 91. It is the petitioner's claim, however, that even though the officers' sworn testimony fully supported a finding of probable cause for the arrest and search, the state court nonetheless violated the Constitution when it sustained objections to the petitioner's questions as to the identity of the informant. We cannot agree.

In permitting the officers to withhold the informant's identity, the court was following well-settled Illinois law. When the issue is not guilt or innocence, but, as here, the question of probable cause for an arrest or search, the Illinois Supreme Court has held that police officers need not invariably be required to disclose an informant's identity if the trial judge is convinced, by evidence submitted in open court and subject to cross-examination, that the officers did rely in good faith upon credible information supplied by a reliable informant.[5] This Illinois evidentiary rule is consistent with the law of many other States.[6] In California, the State Legislature in 1965 enacted a statute adopting just such a rule for cases like the one before us:

> "[I]n any preliminary hearing, criminal trial, or other criminal proceeding, for violation of any provision of Division 10 (commencing with Section 11000) of the Health and Safety Code, evidence of informa-

---

[5] *People* v. *Durr,* 28 Ill. 2d 308, 192 N. E. 2d 379; *People* v. *Nettles,* 34 Ill. 2d 52, 213 N. E. 2d 536; *People* v. *Connie,* 34 Ill. 2d 353, 215 N. E. 2d 280; *People* v. *Freeman,* 34 Ill. 2d 362, 215 N. E. 2d 206; *People* v. *Miller,* 34 Ill. 2d 527, 216 N. E. 2d 793. Cf. *People* v. *Pitts,* 26 Ill. 2d 395, 186 N. E. 2d 357; *People* v. *Parren,* 24 Ill. 2d 572, 182 N. E. 2d 662.

[6] *State* v. *Cookson,* 361 S. W. 2d 683 (Mo. Sup. Ct.); *Simmons* v. *State,* 198 Tenn. 587, 281 S. W. 2d 487; *People* v. *Coffey,* 12 N. Y. 2d 443, 191 N. E. 2d 263. But see *People* v. *Malinsky,* 15 N. Y. 2d 86, 209 N. E. 2d 694. Cf. *Stelloh* v. *Liban,* 21 Wis. 2d 119, 124 N. W. 2d 101; *Baker* v. *State,* 150 So. 2d 729 (Fla. App.); *State* v. *Boles,* 246 N. C. 83, 97 S. E. 2d 476.

tion communicated to a peace officer by a confidential informant, who is not a material witness to the guilt or innocence of the accused of the offense charged, shall be admissible on the issue of reasonable cause to make an arrest or search without requiring that the name or identity of the informant be disclosed if the judge or magistrate is satisfied, based upon evidence produced in open court, out of the presence of the jury, that such information was received from a reliable informant and in his discretion does not require such disclosure." California Evid. Code § 1042 (c).[7]

The reasoning of the Supreme Court of New Jersey in judicially adopting the same basic evidentiary rule was instructively expressed by Chief Justice Weintraub in *State* v. *Burnett*, 42 N. J. 377, 201 A. 2d 39:

"If a defendant may insist upon disclosure of the informant in order to test the truth of the officer's statement that there is an informant or as to what the informant related or as to the informant's reliability, we can be sure that every defendant will demand disclosure. He has nothing to lose and the prize may be the suppression of damaging evidence if the State cannot afford to reveal its source, as is so often the case. And since there is no way to test the good faith of a defendant who presses the demand, we must assume the routine demand would have to be routinely granted. The result would be that the State could use the informant's information only as

---

[7] In the present case California has filed a helpful *amicus* brief, advising us that the validity of this provision is now before the Supreme Court of California. *Martin* v. *Superior Court* (LA 29078). The statute was enacted to modify that court's decision in *Priestly* v. *Superior Court*, 50 Cal. 2d 812, 330 P. 2d 39. See also *Ford* v. *City of Jackson*, 153 Miss. 616, 121 So. 278.

a lead and could search only if it could gather adequate evidence of probable cause apart from the informant's data. Perhaps that approach would sharpen investigatorial techniques, but we doubt that there would be enough talent and time to cope with crime upon that basis. Rather we accept the premise that the informer is a vital part of society's defensive arsenal. The basic rule protecting his identity rests upon that belief.

.        .        .        .        .

"We must remember also that we are not dealing with the trial of the criminal charge itself. There the need for a truthful verdict outweighs society's need for the informer privilege. Here, however, the accused seeks to avoid the truth. The very purpose of a motion to suppress is to escape the inculpatory thrust of evidence in hand, not because its probative force is diluted in the least by the mode of seizure, but rather as a sanction to compel enforcement officers to respect the constitutional security of all of us under the Fourth Amendment. *State v. Smith,* 37 *N. J.* 481, 486 (1962). If the motion to suppress is denied, defendant will still be judged upon the untarnished truth.

.        .        .        .        .

"The Fourth Amendment is served if a judicial mind passes upon the existence of probable cause. Where the issue is submitted upon an application for a warrant, the magistrate is trusted to evaluate the credibility of the affiant in an *ex parte* proceeding. As we have said, the magistrate is concerned, not with whether the informant lied, but with whether the affiant is truthful in his recitation of what he was told. If the magistrate doubts the credibility of the affiant, he may require that the

informant be identified or even produced. It seems to us that the same approach is equally sufficient where the search was without a warrant, that is to say, that it should rest entirely with the judge who hears the motion to suppress to decide whether he needs such disclosure as to the informant in order to decide whether the officer is a believable witness." 42 N. J., at 385–388, 201 A. 2d, at 43–45.

What Illinois and her sister States have done is no more than recognize a well-established testimonial privilege, long familiar to the law of evidence. Professor Wigmore, not known as an enthusiastic advocate of testimonial privileges generally,[8] has described that privilege in these words:

"A genuine privilege, on . . . . fundamental principle . . . , must be recognized for the *identity of persons supplying the government with information concerning the commission of crimes.* Communications of this kind ought to receive encouragement. They are discouraged if the informer's identity is disclosed. Whether an informer is motivated by good citizenship, promise of leniency or prospect of pecuniary reward, he will usually condition his cooperation on an assurance of anonymity—to protect himself and his family from harm, to preclude adverse social reactions and to avoid the risk of defamation or malicious prosecution actions against him. The government also has an interest in nondisclosure of the identity of its informers. Law enforcement officers often depend upon professional informers to furnish them with a flow of information about criminal activities. Revelation of the dual role played by such persons ends their usefulness

---

[8] See 8 Wigmore, Evidence § 2192 (McNaughton rev. 1961).

to the government and discourages others from entering into a like relationship.

"That the government has this privilege is well established, and its soundness cannot be questioned." (Footnotes omitted.) 8 Wigmore, Evidence § 2374 (McNaughton rev. 1961).

In the federal courts the rules of evidence in criminal trials are governed "by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience." [9] This Court, therefore, has the ultimate task of defining the scope to be accorded to the various common law evidentiary privileges in the trial of federal criminal cases. See *Hawkins* v. *United States*, 358 U. S. 74. This is a task which is quite different, of course, from the responsibility of constitutional adjudication. In the exercise of this supervisory jurisdiction the Court had occasion 10 years ago, in *Roviaro* v. *United States*, 353 U. S. 53, to give thorough consideration to one aspect of the informer's privilege, the privilege itself having long been recognized in the federal judicial system. [10]

The *Roviaro* case involved the informer's privilege, not at a preliminary hearing to determine probable cause for an arrest or search, but at the trial itself where the issue was the fundamental one of innocence or guilt. The petitioner there had been brought to trial upon a two-count federal indictment charging sale and transportation of narcotics. According to the prosecution's evidence, the informer had been an active participant in the crime. He "had taken a material part in bringing about the possession of certain drugs by the accused, had been present with the accused at the occurrence of

---

[9] Rule 26, Fed. Rules Crim. Proc.

[10] See *Scher* v. *United States*, 305 U. S. 251; *In re Quarles & Butler*, 158 U. S. 532; *Vogel* v. *Gruaz*, 110 U. S. 311.

the alleged crime, and might be a material witness as to whether the accused knowingly transported the drugs as charged." 353 U. S., at 55. The trial court nonetheless denied a defense motion to compel the prosecution to disclose the informer's identity.

This Court held that where, in an actual trial of a federal criminal case,

> "the disclosure of an informer's identity . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. . . .

> "We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." 353 U. S., at 60–61, 62. (Footnotes omitted.)

The Court's opinion then carefully reviewed the particular circumstances of Roviaro's trial, pointing out that the informer's "possible testimony was highly relevant . . . ," that he "might have disclosed an entrapment . . . ," "might have thrown doubt upon petitioner's identity or on the identity of the package . . . ," "might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' . . . ," and that the "informer was the sole participant, other

than the accused, in the transaction charged." 353 U. S.,
at 63–64. The Court concluded "that, under these cir-
cumstances, the trial court committed prejudicial error in
permitting the Government to withhold the identity of
its undercover employee in the face of repeated demands
by the accused for his disclosure." 353 U. S., at 65.

What *Roviaro* thus makes clear is that this Court was
unwilling to impose any absolute rule requiring disclosure
of an informer's identity even in formulating evidentiary
rules for federal criminal trials. Much less has the Court
ever approached the formulation of a federal evidentiary
rule of compulsory disclosure where the issue is the pre-
liminary one of probable cause, and guilt or innocence is
not at stake. Indeed, we have repeatedly made clear
that federal officers need *not* disclose an informer's iden-
tity in applying for an arrest or search warrant. As was
said in *United States* v. *Ventresca,* 380 U. S. 102, 108,
we have "recognized that 'an affidavit may be based on
hearsay information and need not reflect the direct per-
sonal observations of the affiant,' so long as the magistrate
is 'informed of some of the underlying circumstances'
supporting the affiant's conclusions and his belief that
any informant involved *'whose identity need not be dis-
closed . . . was "credible" or his information "reliable."* '
*Aguilar* v. *Texas, supra,* at 114." (Emphasis added.)
See also *Jones* v. *United States,* 362 U. S. 257, 271–272;
*Rugendorf* v. *United States,* 376 U. S. 528, 533.[11] And

[11] Some federal courts have applied the same rule of nondisclosure
in both warrant and nonwarrant cases. *Smith* v. *United States,* 123
U. S. App. D. C. 202, 358 F. 2d 833; *Jones* v. *United States,* 326 F.
2d 124 (C. A. 9th Cir.), cert. denied, 377 U. S. 956; *United States* v.
*One 1957 Ford Ranchero Pickup,* 265 F. 2d 21 (C. A. 10th Cir.).
Other federal courts, however, have distinguished between these two
classes of cases and have required the identification of informants in
nonwarrant cases. *United States* v. *Robinson,* 325 F. 2d 391 (C. A.
2d Cir.); *Cochran* v. *United States,* 291 F. 2d 633 (C. A. 8th Cir.).
Cf. *Wilson* v. *United States,* 59 F. 2d 390 (C. A. 3d Cir.). See

just this Term we have taken occasion to point out that a rule virtually prohibiting the use of informers would "severely hamper the Government" in enforcement of the narcotics laws. *Lewis* v. *United States,* 385 U. S. 206, 210.

In sum, the Court in the exercise of its power to formulate evidentiary rules for federal criminal cases has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause for an arrest or search. Yet we are now asked to hold that the Constitution somehow compels Illinois to abolish the informer's privilege from its law of evidence, and to require disclosure of the informer's identity in every such preliminary hearing where it appears that the officers made the arrest or search in reliance upon facts supplied by an informer they had reason to trust. The argument is based upon the Due

Comment, Informer's Word as the Basis for Probable Cause in the Federal Courts, 53 Calif. L. Rev. 840 (1965).

In drawing this distinction some of the federal courts have relied upon a dictum in *Roviaro* v. *United States,* 353 U. S. 53, 61:

"Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication."

Since there was no probable cause issue in *Roviaro,* the quoted statement was clearly not necessary for decision. Indeed, an absolute rule of disclosure for probable cause determinations would conflict with the case-by-case approach upon which the *Roviaro* decision was based. Moreover, the precedent upon which this dictum was grounded furnishes only dubious support. *Scher* v. *United States,* 305 U. S. 251, the only decision of this Court which was cited, affirmed the trial judge's *refusal* to order arresting officers to reveal the source of their information.

Process Clause of the Fourteenth Amendment, and upon the Sixth Amendment right of confrontation, applicable to the States through the Fourteenth Amendment. *Pointer* v. *Texas,* 380 U. S. 400. We find no support for the petitioner's position in either of those constitutional provisions.

The arresting officers in this case testified, in open court, fully and in precise detail as to what the informer told them and as to why they had reason to believe his information was trustworthy. Each officer was under oath. Each was subjected to searching cross-examination. The judge was obviously satisfied that each was telling the truth, and for that reason he exercised the discretion conferred upon him by the established law of Illinois to respect the informer's privilege.

Nothing in the Due Process Clause of the Fourteenth Amendment requires a state court judge in every such hearing to assume the arresting officers are committing perjury. "To take such a step would be quite beyond the pale of this Court's proper function in our federal system. It would be a wholly unjustifiable encroachment by this Court upon the constitutional power of States to promulgate their own rules of evidence . . . in their own state courts . . . ." *Spencer* v. *Texas,* 385 U. S. 554, 568–569.

The petitioner does not explain precisely how he thinks his Sixth Amendment right to confrontation and cross-examination was violated by Illinois' recognition of the informer's privilege in this case. If the claim is that the State violated the Sixth Amendment by not producing the informer to testify against the petitioner, then we need no more than repeat the Court's answer to that claim a few weeks ago in *Cooper* v. *California:*

> "Petitioner also presents the contention here that he was unconstitutionally deprived of the right to confront a witness against him, because the State

did not produce the informant to testify against him. This contention we consider absolutely devoid of merit." *Ante,* p. 58, at 62, n. 2.

On the other hand, the claim may be that the petitioner was deprived of his Sixth Amendment right to cross-examine the arresting officers themselves, because their refusal to reveal the informer's identity was upheld. But it would follow from this argument that no witness on cross-examination could ever constitutionally assert a testimonial privilege, including the privilege against compulsory self-incrimination guaranteed by the Constitution itself. We have never given the Sixth Amendment such a construction, and we decline to do so now.

*Affirmed.*

Mr. Justice Douglas, with whom The Chief Justice, Mr. Justice Brennan and Mr. Justice Fortas concur, dissenting.

We have here a Fourth Amendment question concerning the validity of an arrest. If the police see a crime being committed they can of course seize the culprit. If a person is fleeing the scene of a crime, the police can stop him. And there are the cases of "hot pursuit" and other instances of probable cause when the police can make an arrest. But normally an arrest should be made only on a warrant issued by a magistrate on a showing of "probable cause, supported by oath or affirmation," as required by the Fourth Amendment. At least since *Mapp* v. *Ohio,* 367 U. S. 643, the States are as much bound by those provisions as is the Federal Government. But for the Fourth Amendment they could fashion the rule for arrests that the Court now approves. With all deference, the requirements of the Fourth Amendment now make that conclusion unconstitutional.

No warrant for the arrest of petitioner was obtained in this case. The police, instead of going to a magistrate

. and making a showing of "probable cause" based on their informant's tip-off, acted on their own. They, rather than the magistrate, became the arbiters of "probable cause." The Court's approval of that process effectively rewrites the Fourth Amendment.

In *Roviaro* v. *United States,* 353 U. S. 53, 61, we held that where a search *without a warrant* is made on the basis of communications of an informer and the Government claims the police had "probable cause," disclosure of the identity of the informant is normally required. In no other way can the defense show an absence of "probable cause." By reason of *Mapp* v. *Ohio, supra,* that rule is now applicable to the States.

In *Beck* v. *Ohio,* 379 U. S. 89, 96, we said:

> "An arrest without a warrant bypasses the safeguards provided by an objective predetermination of probable cause, and substitutes instead the far less reliable procedure of an after-the-event justification for the arrest or search, too likely to be subtly influenced by the familiar shortcomings of hindsight judgment."

For that reason we have weighted arrests with warrants more heavily than arrests without warrants. See *United States* v. *Ventresca,* 380 U. S. 102, 106. Only through the informer's testimony can anyone other than the arresting officers determine "the persuasiveness of the facts relied on . . . to show probable cause." *Aguilar* v. *Texas,* 378 U. S. 108, 113.[1] Without that disclosure neither we nor the lower courts can ever know whether there was "probable cause" for the arrest. Under the present decision we leave the Fourth Amendment exclusively in the custody of the police. As stated by Mr. Justice Schaefer dissenting in *People* v. *Durr,* 28 Ill. 2d 308, 318, 192 N. E. 2d 379, 384, unless the identity of the informer is disclosed "the policeman himself con-

---

[1] Quoting from *Giordenello* v. *United States,* 357 U. S. 480, 486.

clusively determines the validity of his own arrest." That was the view of the Supreme Court of California in *Priestly* v. *Superior Court,* 50 Cal. 2d 812, 818, 330 P. 2d 39, 43:

> "Only by requiring disclosure and giving the defendant an opportunity to present contrary or impeaching evidence as to the truth of the officer's testimony and the reasonableness of his reliance on the informer can the court make a fair determination of the issue. Such a requirement does not unreasonably discourage the free flow of information to law enforcement officers or otherwise impede law enforcement. Actually its effect is to compel independent investigations to verify information given by an informer or to uncover other facts that establish reasonable cause to make an arrest or search."

There is no way to determine the reliability of Old Reliable, the informer, unless he is produced at the trial and cross-examined. Unless he is produced, the Fourth Amendment is entrusted to the tender mercies of the police.[2] What we do today is to encourage arrests and searches without warrants. The whole momentum of criminal law administration should be in precisely the opposite direction, if the Fourth Amendment is to remain a vital force. Except in rare and emergency cases, it requires magistrates to make the findings of "probable cause." We should be mindful of its command that a judicial mind should be interposed between the police and the citizen. We should also be mindful that "disclosure, rather than suppression, of relevant materials ordinarily promotes the proper administration of criminal justice." *Dennis* v. *United States,* 384 U. S. 855, 870.

---

[2] It is not unknown for the arresting officer to misrepresent his connection with the informer, his knowledge of the informer's reliability, or the information allegedly obtained from the informer. See, *e. g., United States* v. *Pearce,* 275 F. 2d 318, 322.