**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Milton JOHNSON, Defendant-Appellant.**

**No. 17618.**

United States Court of Appeals,
Seventh Circuit.

May 20, 1970.

Rehearing Denied July 22, 1970.

Ronald P. Alwin, Federal Defender Program, Chicago, Ill., for defendant-appellant.

Thomas A. Foran, U. S. Atty., Lawrence J. Cohen, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; Michael B. Nash, Asst. U. S. Atty., of counsel.

Before DUFFY and HASTINGS, Senior Circuit Judges, and FAIRCHILD, Circuit Judge.

HASTINGS, Senior Circuit Judge.

A one count indictment charged that defendant Milton Johnson, on or about May 7, 1968, "fraudulently and knowingly did receive, conceal, buy, sell and facilitate the transportation, concealment and sale of approximately 10 grams of * * * heroin * * *" in violation of Title 21, U.S.C.A. § 174. After a hearing before the court, defendant's motion to suppress the evidence and testimony was denied. Defendant was represented at all times in the trial court by privately employed counsel. The record shows that defendant in open court knowingly and voluntarily waived a trial by jury. The issues were then tried to the court without a jury. Judgment of conviction was entered upon a finding of guilty. Defendant, having previously been convicted of violation of federal narcotic laws, was thereupon committed to the custody of the Attorney General for the minimum mandatory period of ten years. Defendant appeals from the judgment of conviction and sentence. We affirm.

Defendant asserts as reversible error the denial of his motion to suppress. Critical to this issue is whether the federal narcotics agents had probable cause for the warrantless arrest of defendant for possession of narcotics and the warrantless incident search which led to the discovery of the narcotics on his person.

We have read the entire transcript of the evidence introduced in the suppres-

sion hearing, as well as that introduced in the bench trial on the merits. From this the following seems clearly established.

Federal narcotics Agents Kukstra and Jackson had defendant's place of residence in Chicago under surveillance about 9:45 a. m. on May 7, 1968. They had been prompted to do this because of information received from an informant "that Milton Johnson was again big in the narcotics traffic;" because they had been able to effect an arrest and conviction through the use of information secured from this informant in one other case; and because defendant was known to the Bureau of Narcotics in Chicago through his record.

At that time they saw defendant leave in a car in the company of Charles Ellis whom they recognized and knew was "of record" with the Bureau. The agents trailed them to 86th and Cottage Grove, where Agent Jackson followed Ellis into a National Tea Store and observed him making several telephone calls. Ellis then rejoined defendant and they drove to 86th and Drexel, where Ellis left defendant's car and walked east on 86th Street and entered a north-south alley. About thirty-five minutes later, defendant drove his car around the block and parked. At that point the agents saw Ellis walk up to the car. Agent Jackson, using binoculars, saw Ellis hand defendant an aluminum foil package through the window on defendant's side of the car. At that time the agents moved to arrest defendant and Ellis. However, on reaching the corner where the suspects had been and after stopping their car, the agents saw that Ellis had disappeared through a gangway. They then lost sight of defendant after trying to catch up with his car. The agents gave up their attempt to make these arrests and resumed their surveillance of defendant's residence.

About twenty minutes later they again saw defendant leave his house with one Alonzo Oliver. Defendant and Oliver were followed to 67th and Jeffrey, where defendant was seen to leave his car and converse with an unidentified man, return to his car and drive to 43rd and Cottage Grove, where he met another unidentified man outside his car and talked with him. Defendant then drove to the Lake Meadows Shopping Center, arriving about 1:00 p. m. There defendant was seen making several telephone calls and receiving one call inside the Walgreen drugstore. He met Oliver outside the drugstore and together they returned inside for lunch. About forty-five minutes later, defendant and Oliver drove to 51st and King Drive where defendant talked to a third unidentified man. Defendant and Oliver then drove to near 60th and Stony Island, where defendant left his car and met Ellis again. While they were seen talking together, Agent Jackson, again using his binoculars, saw defendant hand a white envelope to Ellis and receive an aluminum foil package in exchange. Ellis entered a nearby hotel and defendant drove to Jeffery and Marquette Road where, with the assistance of other agents, defendant was arrested by Agents Jackson and Kukstra. The aluminum foil package was removed from his left inside coat pocket at that time.

At the conclusion of the evidence on the motion to suppress, the trial court stated the following conclusion on probable cause: "Well, the record shows that according to this agent, who has been in the Bureau for eight years, that he was aware of the narcotics background of both parties involved here. The court has seen enough of these silver packages here and on the west side [Cook County Criminal Courts Building] to realize this seems to be the standard method of wrapping contraband. Usually, there is an exchange of money for the contraband and that, of course, appeared to be what was going on at the time at 60th and Stony Island. The motion to suppress is denied."

Thus, the issue before us is whether or not on the record of the hearing before the district court there was a sufficient showing of probable cause to justify the agents in making a war-

rantless arrest and incident search of defendant.

Defendant contends that the information the agents had, together with their personal observations, amounted to nothing more than a suspicion. The Government asserts a contrary view.

■ We first consider the informant's tip. The Government does not argue that this information alone was sufficient to establish probable cause. We may assume *arguendo* that the informer's tip in the instant case would not be sufficient due to its vague and general character. Nevertheless, in the words of the Supreme Court, "this is not to say that the tip was so insubstantial that it could not properly have counted in the [agents'] determination. Rather, it needed some further support." Spinelli v. United States, 393 U.S. 410, 418, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969).

■ On the question of the existence of such further support, defendant contends that *Spinelli* requires a reversal of his conviction. We believe that a close reading of that case indicates an opposite conclusion. In *Spinelli*, the Court held that an informer's tip, which standing alone did not meet the tests of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), was not sufficiently supported by other factors present in that case to justify a magistrate's finding probable cause to believe a crime was being committed.

The crime alleged there was interstate gambling activities. The additional factors relied upon to support the informant's tip were: 1) An FBI surveillance that disclosed that the defendant on four of five days was seen going from Illinois to Missouri, parking his car in a certain lot and, on one occasion, going into a certain apartment; 2) a check with the telephone company which revealed that such apartment had two telephones; and 3) the fact that defendant was "known" to the FBI as a gambler. Given these factors, the Court concluded that "there can be no question that the  *  *  *  informant's tip, has a fundamental place

in this warrant application. Without it, probable cause could not be established." *Spinelli, supra,* 393 U.S. at 414, 89 S.Ct. at 588. The Court specifically noted that the first two items were completely innocent and that the case would be different if there had been an unusual number of telephones or some abnormal activity. *Id.* The fact that Spinelli was "known" was no more than police suspicion entitled to no weight in these circumstances. *Id.*

If we apply this same technique of carefully assessing all facts known to the agents to ascertain what support they give each other in the determination of probable cause, the contrast between *Spinelli* and the instant case is compelling. Here the informant's tip was not "fundamental" to a finding of probable cause. Rather, the information that defendant was again engaging in the narcotics business merely served to alert the agents to undertake a surveillance of the defendant to determine whether he was in fact so engaged.

That surveillance revealed · activities that cannot be justly characterized as "innocent-seeming." Defendant was observed twice meeting the same known narcotics violator and twice obtaining from him a tinfoil packet. Both instances followed a series of telephone calls and trips to apparently pre-arranged meeting points. Defendant was seen delivering a white envelope in exchange for the second packet.

In *Spinelli*, the Court cited McCray v. Illinois, 386 U.S. 300, 302, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), as a case where, unlike *Spinelli*, a defendant's "abnormal activity" served to buttress an informer's tip. In that case narcotics agents, acting on a tip which was apparently more reliable than that in the instant case, saw the defendant talk briefly and separately with two persons and then walk "hurriedly" between two buildings after seeing the police car. It was at this point that the agents concluded they had probable cause. The Court agreed. While the tip in the instant case may be less reliable, the suspicious activity is

far greater. Without doubt, it was sufficient to "permit the suspicions engendered by the informant's report, to ripen into a judgment that a crime was probably being committed." *Spinelli, supra,* 393 U.S. at 418, 89 S.Ct. at 590.

Above all else is the fact that the agents twice saw defendant receive an aluminum foil packet from a known narcotics violator. Such packages are well-known to experienced narcotics agents as a hallmark of the traffic in drugs. See Fisher v. United States, 92 U.S.App.D.C. 247, 205 F.2d 702 (1953), cert. den. 346 U.S. 872, 74 S.Ct. 122, 98 L.Ed. 381. Any contention that they could have contained innocent commodities is substantially overcome by the fact that they were passing between two known narcotics violators, that the incident occurred twice in the span of a few hours and that both incidents were surrounded by other suspicious activities.[1]

Finally, whereas in *Spinelli* all the magistrate knew was that Spinelli was a "known" gambler, here the agents knew that not only defendant, but also the man from whom he was getting the suspicious packets, were "of record" with the narcotics bureau. This indicates more than "suspicion." It indicates that both had prior convictions for violation of the narcotics laws. And most important is the fact that the agents were not simply giving weight to defendant's reputation as a "bad man," as was the case in *Spinelli*. Rather, they were giving weight to the fact that two prior offenders were twice seen engaging in conduct that gave strong indication they were again engaging in illegal activity. In *Spinelli* all that was shown was that a reputed "bad man" had done a number of perfectly normal and innocent things which an unproven informer alleged were evidence of illegal activity. *Spinelli* is clearly distinguishable from the instant case.[2]

We are led to the firm conviction that the totality of the information possessed by the agents under the circumstances of this case was sufficient to establish probable cause.

In his brief defendant raises a second issue, the constitutional validity of the statute under which he was convicted, 21 U.S.C.A. § 174. However, after his brief was filed, the Supreme Court decided this issue adversely to defendant in Turner v. United States, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (January 20, 1970), and he abandoned it on oral argument.

Mr. Ronald P. Alwin, of the Chicago Bar, ably represented defendant on this appeal following our appointment pursuant to the Criminal Justice Act of 1964. He was assisted by Jean Kamp, of the University of Chicago Law School. We appreciate their services.

The judgment of conviction and sentence is affirmed.

Affirmed.

---

1. *Cf.* Sibron v. United States, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). There the arresting officer saw defendant converse with known addicts over a period of time and subsequently meet with other addicts at a restaurant and hold a conversation. However, the officer had no information concerning defendant and was not acquainted with him. The Court then stated: "It must be emphasized that Patrolman Martin [the officer] * * * saw nothing pass between Sibron and the addicts. * * * Nothing resembling probable cause existed until after the search had turned up the [glassine] en-velopes of heroin." *Id.* at 62–63, 88 S.Ct. at 1902.

2. Also distinguishable from the case at bar is United States v. Burhannon, 7 Cir., 388 F.2d 961 (1968), heavily relied upon by defendant. There we were faced with an arrest based solely on observations and information so remote in time from the actual arrest as to be almost useless in the determination of probable cause to believe that the defendant had narcotics in his possession at the time of the arrest. The arresting officers there as much as admitted that they lacked probable cause at the time they made the arrest.