**Harold JENKINS, Deputy Sheriff of Hardin County, Elizabethtown, Kentucky, Petitioner,**

v.

**Honorable J. Howard HOLBERT, Judge, Hardin Circuit Court, 9th Judicial District, Elizabethtown, Kentucky, Respondent.**

Court of Appeals of Kentucky.

June 9, 1972.

Rehearing Denied Oct. 20, 1972.

Robert N. Hubbard, Elizabethtown, Frank A. Logan, Louisville, for petitioner.

MILLIKEN, Justice.

This is a petition to prohibit the Honorable J. Howard Holbert, Judge of the Hardin Circuit Court, from enforcing a contempt order against Harold Jenkins, Deputy Sheriff of Hardin County, for refusal to reveal the name of a confidential informant.

Sometime between November 1st and November 2nd, 1970, a tractor was stolen from the Dixie Farm Store in Elizabethtown, Kentucky. On November 26, 1970, the petitioner, Harold Jenkins, caused a search warrant to be issued by the Hardin Quarterly Court for a search of the Harvey "Monk" Cardin property on the Sonora Nolin Road in Hardin County. The tractor in question was described by type and serial number as the property to be found, and was actually found on the farm as the informer forecast. The affidavit in support of the search warrant stated that, "On the 26th day of November, 1970, at approximately noon, affiant received information from a reliable source known to this affiant for twenty years and that affiant has never received false information from this informant." The affidavit did not state what was the information received. On March 4, 1971, the accused Cardin moved to quash the search warrant and to suppress the evidence. The circuit court sustained the motion to quash in an order dated April 5, 1971, but reserved ruling on the motion to suppress the evidence. The Commonwealth Attorney then moved

the court to admit the evidence obtained in conducting the search of defendant's premises as being found outside the curtilage and because no search warrant was required to conduct such a search. On the same date, evidence was introduced on that motion and it was during the hearing on the motion that Deputy Sheriff Jenkins refused to reveal the name of his informant because he believed it would be a breach of faith on his part and he was also given advice by counsel that he did not have to reveal the name of his informant. However, Jenkins did reveal what the information was, but the information is not disclosed in this record.

The judge, after giving the petitioner some time to consider the consequences of his refusal, commented:

"* * * Well, of course where the case is now I don't know what would happen to it with the information but the warrant as I construe it . . . just isn't sufficient. So it boils down to a question of whether the person who is accused would go free without a trial . . . it does become my duty when information is available to see that it is produced and I so rule in this case."

The respondent then held the petitioner in contempt, but later withheld enforcement of the contempt order to give petitioner time to seek prohibition in this court.

Petitioner contends that respondent is without authority to demand that the petitioner disclose the name of his informant, and furthermore does not have jurisdiction to punish him for contempt, for the reason that there is a well recognized and established privilege whereby law enforcement officers may protect the identity of persons supplying them with information concerning the commission of crimes.

One of the leading cases on the informer's privilege is Roviaro v. United States, 353 U.S. 53, 59, 77 S.Ct. 623, 627, 1 L.Ed. 2d 639 (1957) wherein that court said:

"What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law . . . The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation."

Continuing, 353 U.S. at 60, 77 S.Ct. at 628:

"A further limitation on the applicability of the privilege arises from the fundamental requirements of fairness. Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action. Most of the federal cases involving this limitation on the scope of the informer's privilege have arisen where the legality of a search without a warrant is in issue and the communications of an informer are claimed to establish probable cause. In these cases the Government has been required to disclose the identity of the informant unless there was sufficient evidence apart from his confidential communication.

"We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance

of the informer's testimony, and other relevant factors."

In McCray v. Illinois, 386 U.S. 300, 312, 87 S.Ct. 1056, 1063, 18 L.Ed.2d 62 (1967) Roviaro was cited with approval and the court commented:

" * * * the Court in the exercise of its power to formulate evidentiary rules for federal criminal cases has consistently declined to hold that an informer's identity need always be disclosed in a federal criminal trial, let alone in a preliminary hearing to determine probable cause for an arrest or search."

 Kentucky has been a little more *rigid in protecting the right of the accused* to know the identity of confidential informers than have the federal cases apparently. (Compare Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) upholding a search warrant based on observations of an unidentified informant) with Walker v. Commonwealth, Ky., 261 S.W.2d 635 (1953) requiring that " * * * the affiant must not only give the names of his informants but must also give facts which show that the informants' intelligence was not solely based on idle rumor or suspicion," citing our prior decisions. In the light of Roviaro we see no good reason to continue to require that the affiant give the name of his informant in his affidavit for a search warrant based on the information he obtained from the informant and, in fact, we have recently so held in Thompson v. Commonwealth, Ky., 472 S.W.2d 884 (1971); and Berkshire v. Commonwealth, Ky., 471 S.W.2d 695 (1971), specifically overruling Walker, supra, on this point. He must, however, detail the information and how it was obtained.

In the case at bar, the inadequacy of the affidavit to establish probable cause to justify the issuance of the search warrant is no longer involved directly, but rather the identity of the unknown informer who gave the information to the deputy sheriff. Most cases involving the identity of the informer arise when his identity is sought by the accused. Here the essential problem is whether the State, on motion of the Commonwealth Attorney and on order of the court, may compel disclosure of his identity. Since it is a government privilege to withhold disclosure except where the rights of the accused will be adversely affected, and is not the privilege of an informant himself, it is logical to conclude that the government may require disclosure of the name of the informer if it deems that information necessary. Whether the informer here is a witness who may be of importance to the prosecution of the State's case against the accused is something we can not determine from the record before us, but the State now has the information so obtained and should have the opportunity to ascertain who the informant is and whether he really knows anything which would qualify him to testify or whether he merely had a suspicion or an opinion which he considered well founded and which turned out to be true.

The writ of prohibition is denied.

All concur.