Panda WEEKS #199057

v.

**W. J. ESTELLE, Director, Texas Department of Corrections.**

Civ. A. No. 72–H–1021.

United States District Court,
S. D. Texas,
Houston Division.

July 15, 1975.

Mike Maness, Bellaire, Tex., for petitioner.

Thomas M. Polan, Asst. Atty. Gen., Austin, Tex., for respondent.

*Memorandum and Order:*

SINGLETON, District Judge.

Petitioner Panda Weeks was convicted in state court of possession of heroin; her punishment was assessed by the jury at 30 years. She did not appeal her conviction.

Petitioner filed a habeas corpus petition in the state trial court asserting illegal search and seizure and a violation of due process in the admission into evidence of the fruits of the search. The writ was denied without an evidentiary hearing because "the petitioner did not state sworn facts which if believed, would entitle her to relief." The petition, which was filed by petitioner's husband on her behalf, stated: "All evidence in the case at bar was obtained in violation of petitioner's rights guaranteed by the fourth amendment of the United States Constitution, in that there was no probable cause for petitioner's arrest or the resulting search." Accompanying the petition was an "Application for the Subpoena Duces Tecum" asking for a copy of the trial records and Statement of Facts. It was alleged that petitioner was an indigent and that the record was "essential in obtaining post conviction relief." The denial of this petition for habeas corpus was appealed to the Court of Criminal Appeals, which denied the appeal without written order. Petitioner filed a brief with her writ to the Court of Criminal Appeals which stated that " . . . without a copy of the trial record and other documents heretofore requested in the trial court, petitioner is unable to furnish the exact facts that were developed at trial. However, it is certain that a study of the record will show that . . . no probable cause existed for making a lawful arrest or search . . . ."

Petitioner then filed her petition for habeas corpus in this court. Respondent has contended both in a motion to dismiss and at the first evidentiary hearing held in this cause that petitioner has not exhausted her state remedies and bases his contention on two grounds:

(1) a "deliberate by-pass" by not appealing her conviction; and

(2) that the question of illegal search and seizure has never properly been presented to the state courts.

■ This court has determined, however, after carefully studying briefs submitted by counsel and following oral argument by counsel, that petitioner did not deliberately by-pass the state appellate procedure by failing to proceed with a direct appeal and that petitioner has exhausted her state remedies. Even if this court found that petitioner had not exhausted her state remedies, this is a situation where this court, after balancing the interests of comity with the rights of the petitioner, would conclude that the best interests of justice are served by hearing the merits of the habeas corpus petition without further delay. The court has been supplied with a complete record of the trial proceedings; furthermore, the court has no reason to fault petitioner for the alleged failure to comply with procedural requirements in the state court, since it appears she was never made aware of the procedural defect. A remand to the Texas courts would plainly frustrate justice and perpetuate a search for relief that should have already been terminated. Therefore, this court finds that exhaustion beyond that already accomplished is not and should not be required.

The major claim she asserts in her petition for habeas corpus is illegal search and seizure. The court held evidentiary hearings in this matter on several different points in time so that petitioner could locate all of her witnesses.

The merits of the constitutional claim are relatively clear-cut. Essentially, petitioner contends that the information supplied to Officer K. R. Dunlap by an alleged informant early on the morning

of January 10, 1968, was insufficient to establish probable cause for the warrantless search of her automobile under the standards announced in *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L. Ed.2d 637 (1969); *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed. 62 (1967); and *Whitely v. Warden,* 401 U. S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).

Essentially, this court finds the following facts on the basis of the testimony produced at the evidentiary hearing: Officer Dunlap was told over the telephone by an informant who had proven reliable on three or four previous occasions that petitioner and her mother-in-law would be in the 1400 block of West 11th Street in Houston early on the morning of January 10, 1968, riding in a 1968 Chevrolet with a specified color, body style, and license number, that they would be leaving that location "shortly," and that the automobile contained heroin. The transcript of the state trial establishes that no other details were provided. On the basis of this tip, the officer radioed a group of narcotics officers and relayed to them the information he had just received.

There is a conflict as to what happened next. The police officers claim that they proceeded to the 1400 block of the street in question and saw an automobile which met the detailed description and in which two females were sitting. They testified that the car was parked at a Seven-Eleven drive-in grocery store, that one of the women (petitioner's mother-in-law, Mrs. Haywood) walked into the Seven-Eleven, and that the other woman (petitioner Weeks) remained in the automobile on the driver's side. The officers then, after parking next to the automobile, went into the Seven-Eleven and arrested Mrs. Haywood. Two other officers arrested petitioner, who was still in the automobile, and read her the *Miranda* warnings. The officers claim that they then searched her automobile

and found heroin under the front seat. The search, of course, was conducted without a warrant.

Petitioner Weeks testified that she was arrested while in the car; that the car was searched, but that no contraband was found in the car; that she was taken to her home and that her home was searched but nothing was found; and that it was not until the next morning that she learned that the officers were alleging that narcotics were found in her car. Mrs. Haywood's testimony is consistent with that of petitioner.

■ The legal issue to be determined is whether the officers had probable cause to arrest petitioner, since if her arrest was based on probable cause, the search would be justified as incident to a valid arrest and within petitioner's immediate control as outlined in *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

The respondent relies on *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), a case in which an informant provided detailed information regarding not only defendant's physical description but also a variety of other facts. In *Draper,* a special narcotics officer received a tip from a reliable informant that Draper went to Chicago to buy heroin and would be returning from Chicago by train in the morning of one of two days. The informant, who had previously informed the officer that Draper was peddling narcotics from a certain address, gave a detailed description of Draper to the officer including Draper's height, weight, age, the fact that Draper was black, that he was wearing a light-colored raincoat, brown slacks, and black shoes, that he would be carrying a tan zipper bag, and that he habitually "walked real fast." The officers staked out the train station and on one of the mornings in question saw a person meeting the exact description getting off the train. Draper started walking "fast" toward the exit and was carrying a "tan

zipper bag." He was arrested on the spot and searched without a warrant. The Supeme Court held that the officers had probable cause to arrest Draper since the information came from a person specially employed for that purpose whose information had always been true in the past and since the arresting officer "had personally verified every facet of the information given him by [the informant] except whether [Draper] had accomplished his mission (in Chicago) and had (the heroin) on his person." *Draper* at 313, 79 S.Ct. at 333.

■ The test cited in *Draper* at 313, 79 S.Ct. 329 at 333 is: probable cause exists where " 'the facts and circumstances within (the arresting officer's) knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1924). In *Draper*, as well as in the instant case, the arresting officers did not know the grounds on which the informer based his conclusion, nor did they seek to find out what they were. The officers acted solely on the informer's word.

The court is of the opinion that the case at hand is distinguishable from *Draper*. In the instant case, the officer testified that the informant did not tell him how he received his information, from where the two women were coming, or why he believed the women would have narcotics in their possession. In *Draper*, the informant at least told the officer that Draper was returning from Chicago where he went to purchase heroin and that Draper was getting off a train returning from Chicago. Furthermore, the officer's observation of Draper walking "fast" toward the exit after stepping off the train was consistent with and corroborative to a degree of the statement of the informant that

Draper would have heroin in his possession which he purchased in Chicago. Since *Draper* was decided on the cumulative effect of the "detailed information" which the "special employee" had given to the arresting officer, this court believes that decision should be restricted to its own particular factual setting and certainly should not be extended to any circumstances that are less persuasive.

■ Since this court finds that petitioner's case is distinguishable from *Draper*, the search, to be valid must fall under the rationale of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which holds that where a police officer observes unusual conduct which leads him reasonably to conclude, in light of his experience, that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous and he identifies himself as a policeman and makes reasonable inquiries and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons. Under a *Terry* analysis, the search conducted by the officers in the instant case was not justified for at least two reasons: (1) there was no reason to believe that petitioner was "armed and presently dangerous," and (2) the search conducted was beyond the permissible scope of the frisk that might be incident to a *Terry*-type stop.

For all these reasons, the court believes that petitioner's petition for a writ of habeas corpus should be, and hereby is, granted. The State is ordered to retry the petitioner in the case in question, in the 180th District Court of Harris County, No. 130540, styled *The State of Texas v. Panda A. Weeks*, within ninety (90) days or dismiss the case.