THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOE LOUIS LESURE, Defendant-Appellant.

Second District   No. 2—88—0736

Opinion filed March 21, 1990.

G. Joseph Weller and Thomas A. Lilien, both of State Appellate Defender's Office, of Elgin, for appellant.

Gary V. Johnson, State's Attorney, of Geneva (William L. Browers and Cynthia N. Schneider, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Joe Louis Lesure, appeals from his conviction of possession of a controlled substance (Ill. Rev. Stat. 1987, ch. 56½, par. 1402(b)). He argues that he was not proved guilty beyond a reasonable doubt and that improper admission of evidence and improper prosecutorial comment deprived him of a fair trial. He also argues that he should have a new suppression hearing. We affirm.

The defendant's prosecution began with a hung jury and consequent mistrial. At his second trial the evidence showed the following. At approximately 8:30 p.m. on February 27, 1987, five Aurora police officers executed a search warrant. They searched the residence at 218 North Loucks in Aurora (the house), for drugs and related materials, plus indicia of residence. The house, a three-bedroom ranch with attached garage, was the defendant's residence.

The officers knocked at the garage door entrance to the house and were admitted by Joseph B. Phillips. Inside the house, they found the defendant and about six other persons playing cards. The defendant's girlfriend was in the shower. At least one other person later emerged from elsewhere in the house.

The officers frisked each person present and checked them for identification. Thereafter, they allowed or asked all whom they believed not to be residents of the house to leave. Only the defendant and his girlfriend remained during the officers' search. The officers' list of persons who had departed included Michael Elliott; it did not include Joe Phillips, Joe Totten, or Robert Totten.

Investigator Wayne Biles conducted the actual search. He began with the house's "middle" bedroom. In the dresser he found papers and magazines, but no clothing or contraband. He found nothing in the closet. Underneath the dresser he found a clear baggie holding white powder which later tested positive for cocaine. Under the mattress of the fully and smoothly made double bed in the room, Investigator Biles found both a second baggie of white powder which tested positive for cocaine and a .22 caliber pistol.

In the house's back bedroom, Investigator Biles found men's clothing. Also, on the bed he found a baggie containing white powder which tested negative for cocaine. In the house's front bedroom, the room the defendant and his girlfriend shared, Biles found clothing in the dresser and closet. Under the mattress he found a .38 caliber pistol.

Investigator Biles and Detective Michael Gilloffo testified that, on the evening of the search, Biles and the defendant discussed the two guns and the defendant claimed to own both. They further testified that although the defendant also claimed to have a firearms owner's identification card (FOID), he was not able to produce it. Biles informed the defendant that he could reclaim the guns by producing his FOID at the police station.

In the remainder of the search, the officers found no other contraband. The only "indicia of residence" found were two pieces of mail: one each to the defendant and to his girlfriend.

Evidence Technician Charles Davis testified that a man who showed an FOID with the defendant's name and who signed the defendant's name picked up the two guns seized at the house. Davis did not recall if the guns were packaged together or separately.

Joseph Phillips testified for the defense that he had lived at the house since sometime in 1986, paying the defendant weekly cash rent. He stated he rented the back bedroom and used that room to store some of his possessions. He claimed he had never reported his new address to the Secretary of State and, therefore, his driver's license bore the address of his former marital home. On cross-examination, Phillips testified that he was not at the house every day.

The defendant's girlfriend testified that she had lived in the house, sharing the front bedroom with the defendant, for approximately 1½ years, except when she was in jail. She admitted to two convictions of theft and to having spent time in the Department of Corrections. According to the girlfriend, on the day in question Joe Phillips was living in the back bedroom; Michael Elliott and Robert Totten were living in the middle bedroom. When the police arrived, the three tenants plus the defendant and she were all at home. According to the girlfriend, Elliott and Totten were both in their early thirties; they kept "what little they [had]" in the middle bedroom, an average-sized room with one double bed.

The defendant testified in his own behalf; the State presented evidence of his prior conviction of possession of a controlled substance. The defendant testified that he was buying the house and had lived there for approximately 17 years. He denied knowledge, possession, or control of the two baggies of cocaine found in the middle bedroom. He also denied either owning the .22 caliber gun which was in the middle bedroom or placing it there. According to the defendant, it was only after he had left the police station that he realized that the police had given him two guns: his .38 plus a .22 which was not his. He sold the .22, as he had no use for it.

The defendant testified that he shared the house's front bedroom with his girlfriend. He had rented the back bedroom to Joseph Phillips since 1986. Although the middle bedroom was currently rented to a man and woman, on the day of the search, he was renting it to his cousin Michael Elliott and Robert Totten; those two began renting at approximately the same time as Phillips. He believed that Elliott and Totten owned nothing more than what they had on their backs.

According to the defendant, all his tenants paid rent weekly in cash for which he keeps copies of receipts. Also according to the defendant, his tenants receive mail at the house, which was first collected from the house's mailbox and then left on the kitchen counter for each individual.

According to the defendant's testimony, when the officers arrived he was playing cards with Billy Kuhn, George Williams, and J.P. Totten. He guessed there were other people in the house, but did not really know since the doors to the two rented bedrooms were closed. According to the defendant, those two rooms had locks on the doors, and he had no way of knowing who was in them. He never went into either room except to clean when a tenant moved out. The court admitted as defense exhibits three letters addressed to the house: one postmarked March 17, 1987, to Joe Philips and Eunice L. McDonald, one postmarked June 16, 1987, to Joe Totten, and one postmarked June 15, 1987, to Robert Lee Totten.

The defendant's first argument on appeal is that he was not proved guilty beyond a reasonable doubt. According to the defendant, there does not exist sufficient evidence to prove beyond a reasonable doubt that he constructively possessed the cocaine discovered by the police. He emphasizes that the middle bedroom was rented to two other persons on the date in question, that other persons were present in the house, and that Joseph Phillips and the girlfriend clearly were tenants in the house and had access to the middle bedroom.

■■ A conviction of possession of a controlled substance requires proof that the accused knew of the presence of the substance and that the substance was in his immediate and exclusive control. (*People v. Rentsch* (1988), 167 Ill. App. 3d 368.) The requisite possession may be actual or constructive; constructive possession follows from an intent and capability to maintain control and dominion. 167 Ill. App. 3d at 370-01.

■■ Narcotics found on premises under the defendant's control give rise to an inference of the defendant's knowledge and possession; such an inference may be sufficient to sustain a conviction, absent

other facts or circumstances which leave a reasonable doubt. (*People v. Jones* (1982), 105 Ill. App. 3d 1143.) In reviewing the sufficiency of the proof, the appellate court must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found proof beyond a reasonable doubt. *People v. Collins* (1985), 106 Ill. 2d 237.

■ Here, the police found cocaine in one of the bedrooms in a house which the defendant inhabited and was purchasing. The drugs were located in the room directly beside the defendant's bedroom, not at all remote from the area over which the defendant had clear, acknowledged control. (Compare *People v. Kissinger* (1975), 26 Ill. App. 3d 260.) Furthermore, the defense witnesses' assertion that the middle bedroom was rented to two other persons on the date in question was counterbalanced by the fact that the room held only books and magazines: no clothing or other personal possessions. The defense assertion of tenants in the middle bedroom was not corroborated by rental receipt copies, which the defendant claimed to keep. On the other hand, despite Joe Phillips' and the girlfriend's tenancy, plus the presence of other persons in the house, the police found evidence corroborating the evidentiary link between the defendant's residence and the drugs: the gun discovered together with cocaine. (Compare *People v. Wolski* (1975), 27 Ill. App. 3d 526.) Although at trial the defendant denied ownership or control of the .22 caliber gun discovered hidden together with cocaine, that denial was counterbalanced both by the police testimony that he acknowledged ownership of the gun on the evening of the search and by the fact that he picked up the gun from the police station and sold it. We find no reason to disturb the jury's guilty finding.

The defendant's second argument on appeal is that he was denied a fair trial because of improper use of evidence. He refers first to the impeachment evidence that he had a prior conviction of unlawful possession of a controlled substance. According to the defendant, that evidence was highly prejudicial and lacked probative value regarding the defendant's credibility, and the court should have forbidden it entirely. Alternatively, considering the similarity of the prior and the charged offenses, the court could, and arguably should, have limited disclosure so that the jury was informed merely that the defendant had a prior felony conviction.

The second portion of the defendant's improper-evidence argument follows from Investigator Biles' testimony describing execution of the search warrant. Specifically, Biles testified that upon entering the house, he saw the defendant. In response to the prosecutor's fol-

low-up question, Biles explained that he recognized the defendant "because I know him from past dealings." According to the defendant, that comment by Biles could only suggest prior criminality or prior dealings in controlled substances by the defendant.

The third portion of the defendant's improper-evidence argument also stems from Investigator Biles' testimony. In the relevant testimony, Investigator Biles explained that his search was based upon a search warrant which commanded him to search, among other things, for drugs. Biles further explained that to get authorization for a warrant, "You have to have probable cause and you have to go to a Judge and he has to sign it." According to the defendant, with that testimony the prosecutor sought to give a judicial validation to the officers' conduct and to the suggestion that the defendant was involved in drugs. He argues that the testimony should have been restricted to the fact that the police had a warrant and executed it at the house.

The defendant emphasizes that the evidence in this case was close and urges that the errors were prejudicial. He argues that we should address the errors under the plain-error rule (107 Ill. 2d R. 615(a)). We have reviewed the defendant's arguments and have considered them in light of the whole case and in light of the defendant's failure to raise timely objections. We find no errors which so affected substantial rights that we must address them as plain error. The defendant has waived these issues for consideration on appeal. See *People v. Hartfield* (1985), 137 Ill. App. 3d 679.

The defendant's third argument on appeal is that he was denied a fair trial by the prosecutor's closing argument, which commented on the defendant's failure to call Totten and Elliott, the alleged tenants of the middle bedroom. The prosecutor observed, once in his opening argument and once in his rebuttal argument, that the two alleged tenants were not called as defense witnesses. According to the defendant, those comments were unfair. He emphasizes the absence of any indication that he had comparatively ready access to the two men, and he asserts that the two men, even if accessible, were unable to testify because they would assert their fifth amendment privilege against self-incrimination.

The defendant argues that we should address the error as plain error. We find that the defendant failed to raise this issue and therefore has waived it on appeal. See 107 Ill. 2d R. 615(a).

The defendant's final argument on appeal is that, even if we affirm otherwise, he should receive disclosure of the confidential informants whose statements are related in the affidavit for the instant search warrant and, thereafter, that he should be granted a new sup-

pression hearing. He argues that in denying his motion for disclosure, the court erred, preventing him from fully developing his suppression motion under *Franks v. Delaware* (1978), 438 U.S. 154, 57 L. Ed. 2d 667, 98 S. Ct. 2674. The *Franks* decision provided for challenges to the veracity or reckless disregard of an affiant's application for a search warrant.

The defendant acknowledges that there is an open question as to whether an informant must be disclosed, where, as here, a *Franks* hearing has been ordered upon a substantial preliminary showing of the reckless use of false information. However, he urges that we should find that disclosure was necessary in the instant case.

■ Under *Franks*, the defendant may not directly challenge a nonaffiant informer's veracity; rather, he may only challenge the veracity or reckless disregard of an affiant. (438 U.S. at 171-72, 57 L. Ed. 2d at 682, 98 S. Ct. at 2684-85.) Further, the Illinois Supreme Court has recognized an informant's privilege against disclosure (107 Ill. 2d R. 412(j)(ii)) and that a court has discretion to decide, following a hearing, that disclosure is not required because the affiant relied in good faith upon credible information supplied by a reliable informant (see *McCray v. Illinois* (1967), 386 U.S. 300, 305, 18 L. Ed. 2d 62, 67, 87 S. Ct. 1056, 1059).

■ We find nothing in this case to cause us to extend a rule mandating informant disclosure following some preliminary suppression-hearing showing of improper statements by a search warrant affiant. Similarly, we find no circumstances here requiring disclosure under existing rules. The trial court held a full hearing on the affidavit supporting the instant search warrant. Despite the defendant's repeated request for disclosure of the informants' identity, the court determined that no further defense evidence which might flow from informant disclosure was necessary to weigh the *Franks* challenge. We find no reversible error.

Based on the foregoing, we affirm the judgment of the circuit court of Kane County.

Affirmed.

UNVERZAGT, P.J., and INGLIS, J., concur.