**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Cornelius H. EDGE, Defendant-Appellant.**

**No. 17395.**

United States Court of Appeals, Seventh Circuit.

June 3, 1971.

Rehearing Denied July 8, 1971.

**1373**

B. Nash, Asst. U. S. Atty., Chicago, Ill., of counsel.

Before SWYGERT, Chief Judge, FAIRCHILD, Circuit Judge, and GORDON, District Judge.[1]

FAIRCHILD, Circuit Judge.

Cornelius Edge appeals from conviction and sentence on three counts, charging him with transactions in specified drugs, with knowledge of unlawful importation. In each instance the conviction rests upon the inference drawn from unexplained possession that the drug was illegally imported and that the possessor knew that fact. Count II (21 U.S.C. § 174) involved cocaine and the government concedes the conviction must be reversed under Turner v. United States (1970), 396 U.S. 398, 418, 90 S. Ct. 642, 24 L.Ed.2d 610. Count III involved marihuana (21 U.S.C. § 176a), and the same concession is made under Leary v. United States (1969), 395 U.S. 6, 52, 89 S.Ct. 1532, 23 L.Ed.2d 57. Count I, however, involved heroin (21 U.S.C. § 174), and conviction may properly rest on inferences of guilt drawn from proof of possession alone. *Turner,* p. 407 of 396 U.S., 90 S.Ct. 642.

The principal issue on appeal is the validity of the search in which the heroin was found.

1. *The second search of Edge's car.*

On March 28, 1968, narcotics agents obtained warrants for the arrest of Edge and for the search of his home. That night, about 8 p. m., agents followed his car, curbed it, and placed him under arrest. After removing Edge from the car, the agents conducted a five minute search and ·discovered a small brown paper bag containing what they then believed and later determined to be marihuana. This became the subject of Count III.

One agent seized the car. Others took Edge to his home, which they searched pursuant to the search warrant. They

Julius Lucius Echeles, Chicago, Ill., Jo-Anne Wolfson, Chicago, Ill., for defendant-appellant.

William J. Bauer, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for plaintiff-appellee; Michael

1. The Honorable Myron L. Gordon, Judge of the U.S. District Court for the Eastern District of Wisconsin, is sitting by designation.

discovered a small aluminum foil package containing a white powder which proved to be cocaine. It became the subject of Count II.

Agents took Edge from his home to the federal court house, whither his car had been brought. With Edge present, and under the garage lights, agents made a more thorough search of the car. Between the glove box and a portion of the dash panel, the agents discovered an aluminum foil package which contained heroin. It was the subject of Count I.

The validity of the second search of the car is the critical issue. One of the subsidiary questions is whether the arrest was valid.

The two warrants were issued at the same time, and the commissioner had both a complaint and an affidavit for search warrant before him. Both may be considered in determining the adequacy of the showing of probable cause.[2]

The complaint was sworn to by agent Pringle. It set forth that it was based on information supplied to Pringle "by Agent Robert Janet, who was told by a reliable informant who has furnished reliable information on previous occasions to him and the Bureau of Narcotics that during the months of June, 1967, through January, 1968, he accompanied another individual to the home of Edge at 7359 S. Prairie, Chicago, approximately twice each month, and on each occasion this other person would enter the home of Edge, and purchase heroin, which he then showed and gave informant. Also, this person told the informant that his 'connect' and source of supply was Cornelius Edge."

Critical to the reliability of the information that Edge repeatedly sold heroin is the credibility of the informant. Even though the informant did not observe the transactions between Edge and the unidentified individual, the circumstances the informant related, including the repeated trips to Edge's home and the informant's observing and receiving heroin from the individual, make it reasonable for the commissioner to believe that the individual was truthful in naming Edge, if the commissioner was given a basis for deciding that it was reasonable to believe the informant.[3] The underlying circumstance from which agent Janet, and in turn the affiant, concluded that the informant was credible was that he had "furnished reliable information on previous occasions." The only possible criticism of that statement as sufficient reason to believe the informant is its generality.[4]

But if a proper reading of *Aguilar* requires more particularity, we think that other information set forth in the affidavit for the search warrant supported a reasonable belief that Edge was making sales of heroin, as well as other narcotics, at and from his home.

The affidavit, also by agent Pringle, set forth six items of information, one of which substantially duplicates the material in the complaint.

In one item, the affiant related observations made by agents the evening of March 18. Pringle and another agent saw Edge come from his home and enter his car. A short time later a woman came out of the home, walked to the car, and handed Edge a package. She reentered the home. A short time later Edge honked his horn. She came out and handed him another package. Edge drove a circuitous route to the Jazz Keller Lounge. Agent Gibson observed him meet another man. Edge remained ten minutes and drove off.

In another item, affiant related that on March 19 at 11 p.m., Edge drove from his home to the Lounge and agent Rhodes observed him meet with a man believed to be Keller. Rhodes heard

---

2. In re Rosenwasser Bros., Inc. (1918) (E.D.N.Y.), 254 F. 171, 173.

3. See Aguilar v. Texas (1964), 378 U.S. 108, 114, 84 S.Ct. 1509, 12 L.Ed.2d 723.

4. See United States v. Roth (7th Cir., 1967), 391 F.2d 507, where, in addition to the fact that the statement was general, there was nothing to show the manner in which the informant had gained his information.

Keller tell a man and a woman, "He does not have anything to sell, but will give you some." The four went to a private room. Rhodes later observed the man, woman, and Edge acting in a manner described, which caused Rhodes to believe they were under the influence of narcotics. The next night Edge again drove from his home to the Lounge and Rhodes observed Edge and another in conduct which led him to believe a narcotics deal occurred.

Another item set forth Edge's record of arrests for narcotics charges, one conviction, and two searches of his home which yielded marihuana and cocaine.

In another item, affiant said that in February Rhodes had purchased heroin from a narcotics peddler, Matthews, and Matthews told Rhodes his source was Edge.

Another item was to the effect that in September, 1967, an informant "who had furnished reliable information on previous occasions" and that Edge was a part of a particular "Organization," dealt in cocaine, marihuana, and heroin, and kept all these in his home and in his auto.

■ Although these other items of information did not relate directly to the transactions between Edge and the individual related in the complaint, they tended, when considered together, to show a pattern and course of conduct, and to support the probability that he had made unlawful sales as charged. We conclude that the warrant was sufficiently supported, and that the arrest was valid.

The only attack on the first search of the car is based on the claim that the warrant and arrest were invalid. The events occurred before the decision of

Chimel v. California (1969), 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

The second search of the car is attacked on the grounds that it was remote in time and place from the arrest. The car had been seized, however, when marijuana was found in it. Although the government ultimately failed to prove that the marihuana had been unlawfully imported and that Edge knew of that fact, the agents had probable cause to believe at the time that it was contraband and its transportation unlawful.[5] If so, the car was subject to forfeiture under 49 U.S.C. §§ 782, 783. A search of a car an interval after it was seized for similar cause under a state statute was held not unreasonable where the subsequent search "was closely related to the reason petitioner was · arrested, the reason his car had been impounded, and the reason it was being retained." [6]

It should also be noted that if the information possessed by the agents gave them probable cause to search the car, it was not unreasonable to make a more thorough search, without a warrant, after moving the car to obtain the advantage of good light.[7]

■ We conclude that the second search was not unreasonable under the circumstances.

2. *Request for production of informant.*

At the suppression hearing, the district court denied a request for production of the informant.

■ There is no constitutional nor federal evidentiary rule that a defendant, in attacking the existence of probable cause for an arrest or search has a right to learn the identity of an informant.[8]

---

5. 49 U.S.C. § 781.

6. Cooper v. California (1967), 386 U.S. 58, 61, 87 S.Ct. 788, 791, 17 L.Ed.2d 730. See Lockett v. United States (9th Cir., 1968), 390 F.2d 168, 172, cert. den. 393 U.S. 877, 89 S.Ct. 175, 21 L.Ed.2d 149; Drummond v. United States (8th Cir., 1965), 350 F.2d 983, 988, cert. den. sub

nom. Castaldi v. United States, 384 U.S. 944, 86 S.Ct. 1469, 16 L.Ed.2d 542.

7. Chambers v. Maroney (1970), 399 U.S. 42, 52, 90 S.Ct. 1975, 26 L.Ed.2d 419; See United States v. Evans (7th Cir., 1967), 385 F.2d 824.

8. McCray v. Illinois (1967), 386 U.S. 300, 311–312, 87 S.Ct. 1056, 18 L.Ed.2d 62.

Appellant relies here on minor variations between the complaint and affidavit for search warrant, both made by Agent Pringle. We do not find that these discrepancies cast doubt on the veracity of the agent or the existence of an actual informant.

3. *Claim of prejudicial circumstances.*

 Almost inevitably, in the course of proof of the three offenses charged, based on the drugs found the night of the arrest, references to the warrants and various other background circumstances came into the record. Appellant contends that these matters were prejudicial and suggests that the prosecutor sought to produce a prejudicial effect. Our examination of the record does not persuade us that references to background facts unfavorable to Edge were undue or avoidable.

4. *Challenge to instructions.*

Appellant sets forth in his brief portions of those instructions dealing with the subject of permissible inferences, from unexplained possession, of unlawful importation and knowledge thereof. He contends that the result was to approve as to these elements "a less substantial standard than the requirement of proof beyond a reasonable doubt." He omits from his quotations the court's admonition that the sections of the statute "do not change the fundamental rule that a defendant is presumed innocent unless proven guilty beyond all reasonable doubt. Nor does it impose upon a defendant the burden of producing proof that the narcotic drug was lawfully imported, or any other evidence. As previously stated, the burden is always upon the prosecution to prove guilt beyond all reasonable doubt." We think the instructions as applied to her-

oin were not open to the criticism made although they were as now conceded erroneous as to the cocaine and marihuana.

Insofar as the judgment finds defendant guilty as charged in Counts II and III and imposes sentences therefor, it is reversed. Insofar as it finds him guilty as charged in Count I and imposes sentences therefor, it is affirmed.

---

For discussions of the difficulties inherent in deciding when and how far to permit attack upon the truthfulness of affidavits submitted to magistrates, see A.L.I. Model Code of Pre-Arraignment Procedure, T.D. No. 3, pp. 107–115; United States v. Halsey (S.D.N.Y., 1966), 257

F.Supp. 1002, 1005; Note, Testing the Factual Basis for a Search Warrant, 67 Columbia L.Rev. 1520 (1967).