UNITED STATES of America ex rel. Franklin THOMAS, # 66325, Petitioner,

v.

David BRIERTON, Warden, Respondent.

No. 74 C 69.

United States District Court, N. D. Illinois, E. D.

Feb. 11, 1976.

Stephen M. Cooper, Geneva, Ill., for petitioner.

William J. Scott, Atty. Gen. of Ill., Melbourne Noel, Asst. Atty. Gen., Chicago, Ill., for respondent.

## MEMORANDUM DECISION

MARSHALL, District Judge.

Petitioner, Franklin Thomas, by a habeas corpus petition brought pursuant to 28 U.S.C. § 2254, challenges his Illinois state court convictions of armed robbery and murder upon three separate constitutional grounds: (1) denial of effective assistance of trial counsel contrary to the sixth and fourteenth amendments, (2) refusal of the state to disclose (and the state trial court's failure to order disclosure of) the identity of a witness contrary to the sixth and fourteenth amendments, and (3) the knowing use by the state of false or perjured testimony contrary to the fourteenth amendment.

Petitioner is represented by counsel appointed here. Respondent has moved to dismiss or alternatively for summary judgment upon the grounds that petitioner failed to exhaust available state court remedies, 28 U.S.C. § 2254(b), and that the state court record and affidavits show respondent is entitled to judgment as a matter of law. Petitioner has also moved for summary judgment. For the reasons hereafter stated, the several motions are denied save for respondent's motion going to the issue of effective assistance of counsel, and the cause is held for an evidentiary hearing on the merits of the issues of failure to disclose the identity of the witness and the knowing use of false or perjured testimony.

### I. Factual background

On July 18, 1968, two men entered the Waldshine Liquor Store in Chicago and announced a holdup. Before the offenders fled, one of them shot and killed Simon Garber, who was one of three employees who witnessed the robbery.

After the robbery, a citizen contacted the police and said that he had been across the street from the store, heard a gunshot, saw two men run out of the store and jump into a car. He recognized three of the car's occupants and gave the police their nicknames—Hank, Bubbles, and Jesse. The informer knew where Hank lived and so he walked toward Hank's apartment after the car drove away. As he approached the apartment, he saw Hank and three other men enter the building. On this tip, four police officers went to the apartment.

Officer Galto asked the building manager if anyone named Hank lived there. The manager said that a man named Hank, whose full name was Henry Thompson, lived in apartment 104. The

officers went to 104, knocked and announced their presence, and entered. Six males, two females, and a child were in the one-room apartment. Two of the males had apparently just shaved their heads, as hair was strewn about. The police asked for Hank, and Henry Thompson said he was Hank. The police arrested all six men without warrants and advised them of their rights. The police then asked if there were any weapons in the apartment. Thompson said no, and told the police they could look around.

One of the women wanted to change clothes. Since it was a one-room apartment, one officer suggested she change in the bathroom. He searched it before she entered. Under the bathtub he found a .32 caliber revolver with three live and one expended cartridges.

Two of the six men arrested were released immediately as unconnected with the crime. Employees of the liquor store identified Henry Thompson and John Yancey as the robbers, and further identified Thompson as the man who shot Simon Garber. A fifth suspect, Jesse Martin, turned state's witness and testified that he and four others planned and executed the robbery. According to Martin, his cohorts were Thompson, Yancey, the petitioner Franklin Thomas, and an unknown fifth person. Thompson, Yancey and Thomas stood trial together. A jury found all three defendants guilty of armed robbery and murder. The state later elected not to prosecute Martin.

The defendants appealed their conviction, contending that the trial court erred when it refused to order disclosure of the identity of the citizen informer. The appellate court analyzed the role of the informer as one who provided probable cause for arrest, rather than as an eyewitness or participant in the crime. Hence, the court found that *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), applied, and affirmed. *People v. Thompson,* 3 Ill.App.3d 470, 278 N.E.2d 462 (1972). The Illinois Supreme Court denied leave to appeal and the

United States Supreme Court denied certiorari.

Petitioner then filed a *pro se* petition under the Illinois Post Conviction Act, *Ill.Rev.Stat.* ch. 38, §§ 122–1 to 122–7 (1973). This petition raised two issues not presented to the Illinois courts on appeal: (1) whether the state violated Thomas' constitutional rights by knowingly permitting Jesse Martin to give perjured testimony; and (2) whether Thomas' trial counsel was so incompetent that Thomas' sixth amendment right to effective assistance of counsel was violated. On the state's motion, the petition was denied without hearing. Petitioner did not appeal this dismissal. Instead, he filed his instant petition for habeas corpus, raising again the issue of the informer's identity, knowing use of perjured testimony and effective assistance of counsel.

## II. Exhaustion of state remedies

The threshold issue raised by the respondent's motion is whether Thomas has exhausted his state remedies as required by 28 U.S.C. § 2254(b). Respondent contends that the petitioner's failure to appeal the dismissal of his post conviction petition renders premature a request for habeas relief on the second and third grounds. Petitioner, however, relies on the Seventh Circuit's analysis of the Illinois waiver doctrine to support his argument that further state court relief on these issues is effectively foreclosed. A consideration of the authorities cited by the parties indicates that petitioner's position is correct.

The Seventh Circuit recently considered whether the § 2254(b) exhaustion requirement mandates the appeal of a post conviction petition dismissal in *United States ex rel. Williams v. Brantley,* 502 F.2d 1383 (7th Cir.1974). To answer this question, the court evaluated the effect of the Illinois waiver doctrine. Illinois courts have rigidly applied the doctrines of waiver and *res judicata.* Once a prisoner raises a constitutional issue on direct appeal, all collateral relief based on that question is precluded by

*res judicata.* Moreover, all objections which the prisoner might have raised on appeal, but did not, are considered waived.

The Illinois courts have drawn a limited exception to the strict application of the waiver doctrine. Where fundamental fairness requires, post conviction relief may be granted even after a direct appeal. *People v. Hamby,* 32 Ill.2d 291, 205 N.E.2d 456 (1965). To date, the Illinois courts have interpreted this exception quite narrowly. Arguably, however, the Illinois courts will gradually expand the exception as unique factual situations are faced. Relying on this reasoning, the respondents in *United States ex rel. Williams v. Brantley, supra,* argued that the dismissal of a post conviction petition should be appealed, to give the Illinois courts the first opportunity to remedy constitutional violations. The Seventh Circuit, however, flatly rejected this suggestion because it saw "no basis for assuming that the 'fundamental fairness' doctrine is likely to be substantially broadened." 502 F.2d at 1385. Hence, requiring the prisoner to return to the state court would only needlessly delay consideration of constitutional claims. The court adopted the rule that exhaustion of the post conviction remedy is required only if "there is direct precedent indicating that under the particular circumstances of a prisoner's case the waiver doctrine will be relaxed." *Id.* at 1386 (footnote omitted).

■ One issue that the Illinois courts have found within the exception is the competency of the prisoner's counsel. Not every challenge to the adequacy of counsel, however, is sufficient to warrant consideration in a post conviction proceeding. The cases indicate that the Illinois courts consider the issue only if counsel's inadequacy was critical, or the petitioner offers a compelling justification for overlooking the issue on direct appeal. *Compare People v. Buckholz,* 24 Ill.App.3d 324, 320 N.E.2d 421 (1974); *People v. McCarty,* 17 Ill.App.3d 796, 308 N.E.2d 655 (1974) (waiver doctrine applied), with *People v. Sommerville,* 42 Ill.2d 1, 245 N.E.2d 461 (1969); *People v. Rooney,* 16 Ill.App.3d 901, 307 N.E.2d 216 (1974); *McClain v. People,* 15 Ill. App.3d 929, 305 N.E.2d 423 (1973) (fundamental fairness exception found). Here, petitioner complains of counsel's failure to pursue the refusal to disclose the informer's identity. This issue is not on all fours with applicable Illinois precedent. Hence exhaustion of the post conviction remedy is not required under *United States ex rel. Williams v. Brantley, supra.*

The issue of perjured testimony calls for a different conclusion. In *People v. Gendron,* 41 Ill.2d 518, 244 N.E.2d 149 (1969), the Illinois Supreme Court indicated that a charge that the state knowingly used perjured testimony is cognizable in a post conviction hearing under the fundamental fairness exception. Noting this case, the court in *United States ex rel. Williams v. Brantley* suggested that a habeas petition should be dismissed for failure to exhaust remedies if the petitioner could still appeal the dismissal of the post conviction petition. 502 F.2d at 1385 n. 4. Accordingly, before the merits of Thomas' claim on this issue can be reached, we must ascertain whether he could still appeal the dismissal of the post conviction petition. Thomas' habeas petition gives the date of dismissal as February 26, 1973. Appeal of a post conviction decision must be taken within 30 days. *Ill.Rev.Stat.* ch. 38, § 122–7; ch. 110A, § 303 (1973). Thus, appeal of the dismissal is barred, and the merits of Thomas' petition may be reached.

Finally, respondent contends that if the habeas petition is not dismissed for failure to exhaust state remedies, it should be dismissed because the petitioner deliberately relinquished his constitutional claims by failing to appeal the post conviction dismissal. *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), however, requires a conscious tactical decision before a waiver of a constitutional claim is found. Petitioner failed to appeal because settled Illinois law indicated that further consideration of the

issues he raised was precluded by the waiver doctrine. This action hardly qualifies as the deliberate tactical maneuvering contemplated by the Court in *Fay v. Noia.* See *United States ex rel. Williams v. Brantley, supra,* at 1387.

In summary, petitioner's failure to appeal the dismissal of his petition under the Illinois Post Conviction Hearing Act does not prohibit pursuit of his federal remedy. All available state court avenues of relief have been exhausted. First, the failure to disclose the citizen informer's identity was presented to and rejected by the Illinois Appellate Court. Second, the Illinois courts have not applied the fundamental fairness exception to the question of the competency of trial counsel under the circumstances alleged here. Third, although the exception has been applied to permit post conviction review of the question of knowing use of perjured testimony, the petitioner can no longer appeal the dismissal of his post conviction petition. Finally, petitioner did not make a deliberate tactical decision to waive his constitutional claims in furtherance of his litigational strategy. Accordingly, we turn to the petition on its merits.

### III. Effective assistance of counsel

Petitioner complains of his trial counsel's failure to pursue the question of the informer's identity. Apart from this lapse, the record shows that counsel diligently defended his client. See respondent's memorandum in support of motion to dismiss, Exh. C; Record at C157, 176; R576, 693, 1223–1300, 1697, 1899–1901, 1906–1907. While the failure to pursue the identity question is regrettable, the omission, standing alone, does not raise a factual question suggesting that counsel's inaction violated the profession's minimum standards. Even under the recently announced standard of competence in *United States ex rel. Williams v. Twomey,* 510 F.2d 634 (7th Cir. 1975), *cert. denied,* 423 U.S. 876, 96 S.Ct. 148, 46 L.Ed.2d 109 (1975), the re-

spondent is entitled to judgment as a matter of law on this issue.

The respondent's motion for summary judgment on the issue of effective assistance of counsel is granted.

### IV. The identity of the witness

Petitioner contends that the state's refusal to reveal the identity of the citizen informer violated his constitutional rights. Information provided by an informer can be relevant on two issues. Through a communication to the police, the informer may provide information establishing probable cause for the defendant's arrest or search. Alternatively, the informer may be an eyewitness to or participant in the criminal transaction. The test for determining the constitutionality of the state's effort to withhold the informer's identity varies concomitantly with the informer's role.

In *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967), the Court addressed the question of the informer who provides probable cause. At the outset, the Court recognized the state's interest in affording a testimonial privilege which safeguards the identity of citizens who supply information on criminal activities. Moreover, federal law permits a federal official to withhold an informer's identity when applying for a warrant, as long as the underlying facts convince the magistrate that a reliable informer gave credible information. To require a state judge to demand more, the Court felt, would be a usurpation of the state's power to devise its own evidence laws within constitutional limits. Accordingly, the Court refused to hold that there is a constitutional right to learn the identity of an informer whose information is used solely as basis for probable cause. 386 U.S. at 311–13, 87 S.Ct. 1056; *United States v. Edge,* 444 F.2d 1372, 1375 (7th Cir.1971), *cert. denied,* 404 U.S. 855, 92 S.Ct. 101, 30 L.Ed.2d 97 (1971).

But when the informer participates in or witnesses the crime, the Court employed a different analysis to test the constitutionality of the informer's privi-

**20**

lege. In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the Court balanced the public interest in protecting the flow of information against the defendant's right to prepare his defense. Although the Court refused to adopt a fixed rule, it indicated that the prosecution must reveal the informer's identity if his testimony would be relevant and helpful to the defense. This determination requires a consideration of the crime charged, the possible defenses, and the significance of the informer's testimony. 353 U.S. at 62, 77 S.Ct. 623.

Because the constitutionality of the state's invocation of the informer's privilege depends upon his role, the first step is to determine his relation to the crime. Here, the informant saw two men run out of the store, jump into a car with others, drive away, and later enter Thompson's apartment. Using these facts, the respondent submits that the informer merely provided probable cause for arrest, and urges us to apply *McCray*. Petitioner concedes that the informer provided facts leading to probable cause, but also contends that the informer was a material eyewitness. See Reply to respondent's motion, at 16. Clearly the informer's testimony here bears upon the issue of probable cause. But it may also bear upon the issue of petitioner's innocence or guilt. Thus, both *McCray* and *Roviaro*, and their progeny, apply and will be considered respectively.

Petitioner contends that the failure to identify the informer who provided the foundation for probable cause violated his constitutional rights. In so arguing, he urges us to adopt the Second Circuit's rule on disclosure. In a series of cases that circuit has mandated disclosure of the informer's identity whenever his communication provides the core, or bulk, of the evidence of probable cause. *United States v. Cappabianca*, 398 F.2d 356 (2d Cir.1968); *United States v. Tucker*, 380 F.2d 206 (2d Cir.1967). Judge Friendly commented that this rule strikes a rational balance between the public interest in protecting the source's identity and the defendant's interest in challenging police conduct. *United States v. Comissiong*, 429 F.2d 834, 837 (2d Cir.1970).

The Seventh Circuit, however, follows a different test. Here, if the trial court is satisfied that the informer was reliable and produced credible information going to the issue of probable cause, the informer's identity can remain secret. *See United States v. Edge*, 444 F.2d 1372, 1375 (7th Cir.1971). Moreover, as respondent correctly notes, the Second Circuit test is a rule of evidence for federal criminal trials, rather than a constitutional doctrine. Thus, to the extent that the informer's role was that of the provider of probable cause, the appropriate test for this court in a habeas action is *McCray*.

■ The testimony of Officer Galto shows that the informer claimed to have personally observed men run from the store, down an alley, and jump into a car. He recognized three of them and knew them by their nicknames. He knew where one named Hank lived. He saw Hank and three others go into Hank's building. See Record at pp. 566–572. The arresting officers corroborated part of the tip when they arrived at the apartment building. A brief talk with the manager confirmed that a man named Hank lived in number 104. From this information, the officers were justified in concluding that the information they received was credible. Moreover, the informer was an ordinary citizen, and not a paid police employee, and he voluntarily came forward with his information. Given his status as an ordinary citizen, further proof of his reliability would be difficult to obtain. *State v. Paszek*, 50 Wis.2d 619, 184 N.W.2d 836 (1971).

Confronted with these underlying circumstances, the police were warranted in believing that the petitioner and his co-defendants had committed the crime. The trial court justifiably was convinced that the officers relied "in good faith

upon credible information supplied by a reliable informant." *McCray v. Illinois,* 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). As to the issue of probable cause, disclosure of the informer's identity was not required.

██ Although the officers had probable cause to make a warrantless arrest, the question of the relevancy of the informer's identity to the issue of petitioner's guilt or innocence remains. The *Roviaro* Court held that the validity of a decision to withhold the identity of an eyewitness or participant must be determined on a case by case basis. Hence we turn to a consideration of the particular facts of petitioner's case.

Only one person testified to Thomas' participation in the robbery, and that was Jesse Martin. Neither of the surviving employees identified him as one of the offenders. Record at 823, 884. Although the informer said he saw "Bubbles" in the car, it was Martin who linked that name with Thomas. Aside from Martin's testimony, the only evidence connecting Thomas with the crime was circumstantial. As petitioner argues, however, the informer might have controverted the damaging inferences emanating from the circumstantial evidence. Only the informer could testify whether Thomas was or was not the "Bubbles" seen in the car.

Thus, the informer's testimony might have been material and helpful to Thomas' defense. The petitioner has demonstrated the existence of a factual question on this issue. He should be afforded the opportunity to adduce further evidence on the issue upon a disclosure now of the identity of the informer. The cross motions for summary judgment on this issue are denied.

### V. Perjured testimony

██ Petitioner's final ground for habeas relief is that the state knowingly allowed its chief witness, Jesse Martin, to give perjured testimony. A conviction obtained through the state's knowing use of false evidence violates the fourteenth amendment's guarantee of a fair and impartial trial. "The same result obtains when the State although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois,* 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217, 1221, (1959). This principle applies in full force even if the false testimony goes only to the issue of a witness' credibility. *Id.* The reason for this rule is that the jury must be able to effectively evaluate a witness' motivation for testifying against his partners in crime. Knowing that the witness will serve no time, or receive a lighter sentence, a jury could logically conclude that his testimony is fabricated. *Id.* at 270, 79 S.Ct. 1173. The good or bad faith of the prosecutor who fails to correct false testimony is irrelevant. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).

Jesse Martin provided the only direct, as opposed to circumstantial evidence against Thomas. Two aspects of his testimony are relevant here. According to the record, Martin testified that he had been in jail continuously since his arrest. Record at 1225, 1237. The record shows, however, that upon his arraignment Martin was released on his own recognizance bond in the amount of $5,000. Shortly thereafter he was housed in the witness quarters of the Cook County Jail until he testified against petitioner.

Martin also testified that although he made no deal with the prosecutors, they agreed to recommend a sentence of 14 years to 14 years and one day if he cooperated. See Record at 1290. Although the state denies it, additional evidence strongly suggests that the prosecutors promised and provided Martin a much better deal in exchange for his testimony.

██ As previously noted, Martin was released on bail soon after his arrest, he was then housed in the witness quarters of the Cook County Jail, and the state nolle prossed his indictment within a month of Thomas' conviction. *Id.* Exh. 3. Thus Martin has literally served no time for his participation in the robbery and murder, while the other defendants

received terms of 150 to 299 years. See Record at 1920, 1922. These facts raise a serious question of whether Martin's testimony regarding a deal for his testimony was false.

Before petitioner is entitled to relief because of false testimony, it must appear that the testimony was both false and material and known by the state to have been false. The standard to be applied is whether the false testimony could reasonably be expected to affect the jury's determination of guilt or innocence. *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). Martin's testimony about his confinement before trial was evidently incomplete. The materiality of the omission and the responsibility for it are less obvious. His testimony about a deal, on the other hand, is material, but its falsity is uncertain and the knowledge of the state's agents is unclear. Summary judgment is improper unless the moving party establishes that no factual issues remain and that he is entitled to judgment as a matter of law. Since the parties' materials raise questions of fact concerning the truth and effect of Martin's testimony, summary judgment must be denied.

Summary judgment for respondent is granted on the issue of competency of counsel; the cross motions for summary judgment are denied in all other respects. Cause set for report on status March 19, 1976.