[No. B173591. Second Dist., Div. Eight. Mar. 30, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
DONNA NAVARRO, Defendant and Appellant.

[No. B175513. Second Dist., Div. Eight. Mar. 30, 2006.]

EDWARD CORELLA NAVARRO, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

**COUNSEL**

Angelyn Gates for Defendant and Appellant and for Petitioner.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Michael R. Johnsen and Jonathan J. Kline, Deputy Attorneys General, for Plaintiff and Respondent.

No appearance for Respondent Superior Court.

Steve Cooley, District Attorney, Patrick Moran and Matthew G. Monforton, Deputy District Attorneys, for Real Party in Interest.

**OPINION**

**RUBIN, J.—**

## ISSUES PRESENTED

█ A lawyer goes to the police, tells them her clients are committing a string of crimes, and also tells them where to look for evidence of those crimes. Based on that information—which the lawyer learned through her representation of the clients—the police obtain a search warrant and find the evidence, leading to criminal charges against the clients. Should the search warrant be quashed and all evidence found through the warrant suppressed as a remedy for the lawyer's alleged breach of the attorney-client privilege? Because the government did not procure or induce the breach, we conclude the answer is no.[1] When the police use a confidential informant to obtain a warrant, and the defendant seeks to quash the warrant because he believes the informant was his lawyer and the police procured a breach of the lawyer-client privilege, we also conclude that an in camera review is the proper procedure to decide such a motion.[2]

## FACTS AND PROCEDURAL HISTORY

Acting on a tip from a confidential informant, Los Angeles County Sheriff's deputies obtained a warrant in April 2002 to search an auto body repair shop and the homes of several members of the Navarro family, including those of brothers Alejandro and Edward Corella Navarro. Based on evidence seized from those locations, Alejandro, Edward, and Edward's wife, Donna Navarro (the Navarro defendants), were charged with various counts related to their alleged operation of a car theft ring.[3]

---

[1] Although the factual scenario described *ante* is presented generally by this case, as discussed *post*, we express no opinion as to whether the attorney was the informant or whether privileged material was conveyed to the police.

[2] In our original opinion, which was filed on August 15, 2005, we concluded that any error from conducting an in camera hearing was harmless in this case and that the appellants had waived the issue. We granted a petition for rehearing to resolve the question of whether an in camera review was proper, or whether an open hearing with the participation of appellants and their lawyers was required.

[3] Donna Navarro was charged with three counts of grand theft (Pen. Code, § 487a), two counts of receiving stolen property (Pen. Code, § 496d, subd. (a)), and one count of conspiracy. (Pen. Code, § 182, subd. (a)(1).) Edward Navarro was originally charged with most of the same counts, but ultimately faced only one count of conspiracy. Alejandro Navarro was charged with one count of receiving stolen property and one count of unlawfully taking a vehicle. (Veh. Code, § 10851, subd. (a).)

Although we will continue to refer to Edward, Alejandro, and Donna Navarro collectively as the Navarro defendants, for ease of reference, when we refer to any Navarro family member

After reviewing the sheriff's affidavit submitted in support of the search warrant, the three Navarro defendants became convinced that their sister, Elizabeth, had been the sheriff's unnamed confidential informant. Elizabeth is a lawyer and had previously represented some of the Navarro defendants in both civil and criminal matters. Donna and Alejandro brought motions to: (1) order disclosure of the identity of the informant (Evid. Code, §§ 1041, 1042); and (2) quash the search warrant, which they contended would thereby lead to a failure of the search "as a fruit of the poisonous tree . . . ." According to Alejandro's declaration, he, Edward, and Donna met with Elizabeth in early 2002 to get legal advice regarding the circumstances surrounding the charges that were later brought against them. Donna, Edward, and Alejandro "asked Elizabeth about the law and our rights and we discussed strategy and how to deal with the situation from a legal stand point." Donna and Alejandro argued that disclosure of the informant's identity was important in order to prove that Elizabeth had been the informer and had therefore breached the attorney-client privilege by going to the sheriff. Once that was established, quashing the search warrant would be the proper remedy for such a breach, they contended. That motion was heard by Judge Candace J. Beason and was denied without prejudice on November 4, 2002, on two grounds: First, because there was no evidence to show "complicity" by the sheriff under *U.S. v. White* (7th Cir. 1992) 970 F.2d 328 (*White*); and second, because there was insufficient proof of an attorney-client relationship.

One month later, Donna and Alejandro filed a supplemental motion to disclose the identity of the confidential informant, which included a more detailed declaration from Alejandro concerning the existence of an attorney-client relationship with Elizabeth in connection with the charges against the Navarro defendants. Judge Beason then agreed to hold an in camera hearing concerning the sheriff's complicity, if any, in Elizabeth's supposed breach of the attorney-client privilege. On March 21, 2003, the sheriff's officer who initiated the search warrant testified in camera to the identity of the informant and the circumstances under which the informant contacted the sheriff. After hearing that testimony, the court found no complicity by the sheriff and denied Donna and Alejandro's motion. Six months later, Donna entered a negotiated plea of guilty to the three grand theft counts, but did so on the condition that she would be able to appeal the issues relating to the supposed breach of her attorney-client privilege. Donna then filed a notice of appeal.

individually, we will do so by their first names. Even though Edward is before us as a writ petitioner, while Donna is before us on appeal, for ease of reference we will sometimes refer to Edward and Donna collectively as appellants. Similarly, even though the Attorney General's Office is the respondent in Donna's appeal, and the Los Angeles County District Attorney's office is the real party in interest to Edward's writ petition, for ease of reference we will sometimes refer to those parties collectively as the respondent, or individually as the Attorney General and the district attorney.

Edward was not arrested until December 2003. Based on his suspicion that Elizabeth had been the sheriff's informant, he filed a motion in early January 2004 to disclose the identity of the informant, quash the search warrant, and suppress evidence. That motion was denied without prejudice by Judge Carlos A. Uranga. Edward brought a similar motion a few weeks later, which was to be heard before Judge Clifford L. Klein. Judge Klein was unsure about the proper procedural vehicle for such a motion, and decided to hear it under Evidence Code section 402, which governs foundational challenges to the admissibility of evidence. At the March 22, 2004, hearing, the Navarro defendants and friends and family members testified that Elizabeth admitted to having supplied the sheriff with information about the Navarro defendants' alleged car theft ring.

The hearing was continued to March 26, 2004, where the sheriff's officer who initially dealt with the informant was called to testify. The deputy first testified in open court about his contacts with the informant. According to the deputy, the informant initiated contact with him. They had from 10 to 40 phone conversations, and, of those, the informant placed anywhere from 80 to 90 percent of the calls. Under cross-examination by Edward's lawyer, the deputy said he never asked the informant to act as his agent, never asked the informant to get any information for him, and never indicated that it would be helpful to have certain specific information. The court then decided to continue the deputy's testimony in camera. After the in camera testimony was over, the court scheduled argument for April 5, 2004.

At the April 5 hearing, the court confirmed that it had earlier held an in camera hearing where the informant testified about the informant's contacts with the sheriff. The court also confirmed that the issue it would decide was whether there had been any complicity by the sheriff in violation of *White, supra,* 970 F.2d 328. The court specifically declined to reach the issue of whether any attorney-client relationship existed, noting that defense counsel had not been given an opportunity to cross-examine the informant. The court found that the sheriff had not engaged in a "knowing procurement" of privileged information, had not intentionally or knowingly violated that privilege, and therefore had not been complicit in the breach of any privilege that might have existed. It denied Edward's motion.

Edward petitioned this court for a writ of mandate or prohibition, declaring that he could not be prosecuted based on any evidence found through the search warrant. We stayed proceedings, issued an order to show cause, and directed the parties to brief the issues. We later issued an order stating that we would hear both Edward's writ petition and Donna's appeal at the same time.

Because the factual issues are nearly identical, and because the legal issues are identical, we issue this one decision to resolve both matters.[4]

## DISCUSSION

### 1. *Quashing the Search Warrant*

#### A. *No Sixth Amendment Right to Counsel Violation Occurred*

Appellants contend that the sheriff violated their Sixth Amendment right to counsel by using privileged information from their lawyer to obtain the search warrant.[5] For purposes of our discussion, we assume that Elizabeth acted as appellants' lawyer in connection with this case and that Elizabeth breached the lawyer-client privilege when she provided the sheriff with information obtained through her representation. Although we assume that state of facts, we do not decide the issue and express no opinion as to whether Elizabeth had in fact been the informant. We start our substantive analysis with a short primer on the attorney-client privilege.

■ The attorney-client privilege, which authorizes a client to refuse to disclose, and prevents others from disclosing, confidential communications between lawyer and client, is considered a hallmark of our jurisprudence. (Evid. Code, § 950 et seq.; *Solin v. O'Melveny & Myers* (2001) 89 Cal.App.4th 451, 456–457 [107 Cal.Rptr.2d 456].) The privilege is fundamental to our legal system and furthers the public policy of ensuring every person's right to freely and fully confer with and confide in his or her lawyer in order to receive adequate advice and a proper defense. (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1146 [86 Cal.Rptr.2d 816, 980 P.2d 371].) Safeguarding a client's confidences is one of a lawyer's most basic obligations. (*Ibid.*, citing Bus. & Prof. Code, § 6068, subd. (e)(1) [it is an attorney's duty to "maintain inviolate the confidence, and

---

[4] As a preliminary matter, respondent contends that Donna's guilty plea precludes her appeal. We disagree. First, she obtained a certificate of probable cause from the trial court. (Pen. Code, § 1237.5.) Second, an appeal contesting the validity of a search or seizure is allowed following a guilty plea. (Pen. Code, § 1538.5, subd. (m).) Donna's motion to quash the search warrant argued that the evidence should be suppressed, thereby satisfying that section. (*People v. Lilienthal* (1978) 22 Cal.3d 891, 896–897 [150 Cal.Rptr. 910, 587 P.2d 706].) Finally, Donna's right to appeal that issue was an express term of her plea bargain, meaning she would be able to withdraw her plea if the appeal could not be heard. (*People v. Burns* (1993) 20 Cal.App.4th 1266, 1274 [25 Cal.Rptr.2d 230].) Respondent also contends, without analysis or citation to authority, that Donna's appeal is somehow moot. Because her appeal is expressly allowed by Penal Code section 1538.5, subdivision (m), it is clearly not moot.

[5] Actually, Donna's brief does not specify which constitutional or statutory rights she believes were violated. Edward's petition does, however, and we will consider his arguments as applicable to Donna's appeal as well.

at every peril to himself or herself to preserve the secrets, of his or her client."].) The privilege applies even where the attorney has not actually been retained. When a person seeks legal assistance from an attorney in anticipation of hiring the lawyer to represent him, any information acquired by the lawyer is privileged even if actual employment does not result. (*People v. Gionis* (1995) 9 Cal.4th 1196, 1208 [40 Cal.Rptr.2d 456, 892 P.2d 1199].)

Appellants contend that because the sheriff utilized privileged information in obtaining the warrant, the warrant should have been quashed and all evidence obtained through it should have been suppressed as the "fruit of the poisonous tree."[6] The attorney-client privilege is a testimonial *privilege*. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 819 [268 Cal.Rptr. 753, 789 P.2d 934] (conc. opn. of Mosk, J.).) By itself, this privilege is merely a rule of evidence and does not supply a constitutional right. (*Clutchette v. Rushen* (9th Cir. 1985) 770 F.2d 1469, 1471.) However, where the government intrudes into the attorney-client relationship to obtain privileged information, the Sixth Amendment right to counsel may be violated. This usually involves some type of government misconduct, such as infiltrating the defense by planting informants or intercepting confidential communications. (*Clutchette v. Rushen, supra*, at pp. 1471–1472.) However, the constitutional right to counsel does not attach until charges are actually brought. (*Moran v. Burbine* (1986) 475 U.S. 412, 430–431 [89 L.Ed.2d 410, 106 S.Ct. 1135] [initiation of judicial proceedings "fundamental to [implication] of . . . Sixth Amendment"]; *U.S. v. Kennedy* (10th Cir. 2000) 225 F.3d 1187, 1194 (*Kennedy*) [considering privileged attorney-client information given to prosecutors during investigatory stage]; see *People v. Slayton* (2001) 26 Cal.4th 1076, 1079 [112 Cal.Rptr.2d 561, 32 P.3d 1073] [right to counsel attaches when charges are brought].) Because Elizabeth's alleged misconduct prompted the search warrant which thereafter led to charges being brought against the Navarro defendants, it is clear that her supposed breach of the attorney-client privilege came before charges were filed, and before the Sixth Amendment right to counsel attached. If appellants were entitled to quash the search warrant and suppress the evidence, their right to such relief must come from some other source.

---

[6] The fruit of the poisonous tree doctrine is an exclusionary rule that prohibits the introduction of evidence that is causally connected to an unlawful search. (*People v. Neely* (1999) 70 Cal.App.4th 767, 785 [82 Cal.Rptr.2d 886].) In the area of constitutional law, the fruit of the poisonous tree doctrine supplies an exclusionary rule that is designed to deter police misconduct. Application of the rule calls for a balancing of interests, including the public's interest in the effective prosecution of criminals. Because the rule exacts a toll on society, its application must be guided by its deterrent purposes and its use must bear some relation to its purposes. (*Id.* at pp. 786–787.)

### B. *Absent Government Misconduct, No Due Process Violation Occurred*

■ Although the right to counsel protections of the Sixth Amendment are limited to governmental misconduct occurring after charges have been brought, the due process protections of the Fifth Amendment may provide a remedy for misconduct by the government that occurs during the preindictment stage. (*Kennedy, supra,* 225 F.3d at p. 1194; *U.S. v. Marshank* (N.D. Cal. 1991) 777 F.Supp. 1507, 1518 (*Marshank*).) Appellants have never specified the Fifth Amendment as a basis for their challenges to the search warrant. However, the decision primarily relied upon below by the prosecutor and the trial court—*White, supra,* 970 F.2d 328—appears to have been based in part on the due process clause. We will therefore address that issue.

The defendants in *White* were convicted of bankruptcy fraud. They appealed their conviction, in part based on the claim that the government violated their Fifth and Sixth Amendment rights by inducing their former lawyer to supply incriminating information against them in breach of the attorney-client privilege. The Seventh Circuit remanded the matter to the United States District Court to make certain factual findings, including whether the government had been complicit in any breach of the lawyer-client privilege and, if so, whether the government made use of any privileged documents. The latter inquiry was aimed at avoiding on appeal the constitutional issues raised by the Whites. As a result of the evidentiary hearing held on remand, it appeared that the Whites' former bankruptcy lawyer Mark Center (Center) had been convicted of bankruptcy fraud in a case that was unrelated to the Whites' convictions. Center did, however, represent the Whites in connection with the matter which led to the charges against the Whites. Before Center was sentenced on his conviction, a federal prosecutor asked Center if he wanted to provide information about the Whites. Center turned over documents obtained through his former representation of the Whites and testified before the federal grand jury which eventually indicted the Whites.

The Seventh Circuit began by stating that because the alleged breach of the lawyer-client privilege occurred before charges were brought against the Whites, the Sixth Amendment's right to counsel was not at issue. Citing to an earlier, related decision which discussed violations of the Fifth Amendment—*U.S. v. White* (7th Cir. 1989) 879 F.2d 1509, 1513—the court said that the question instead concerned whether Center violated his ethical obligations, whether the government had been "complicit" in that violation, and, if so, whether the Whites had been prejudiced as a result. (*White, supra,*

970 F.2d at pp. 333–334.)[7] The court first held that the lawyer-client privilege had not been breached because the documents Center gave to prosecutors were not confidential. (*Id.* at pp. 334–335.) The court alternatively held that even if a breach of the privilege did occur, the district court found that the government had not explicitly or implicitly promised Center leniency for his cooperation, adding that the Whites merely speculated that the government "procured" a breach of the privilege. Combined with the fact that the government did not ask Center to obtain copies of any privileged documents, the Seventh Circuit concluded the government had not been complicit in any breach by Center of the lawyer-client privilege.*(Id.* at p. 336.)

Thus, according to *White,* a due process violation for breach of the lawyer-client privilege turns on whether the government helped instigate or orchestrate a breach of the privilege. That is consistent with decisions from other courts which have considered this issue. (*Kennedy, supra,* 225 F.3d at pp. 1194–1195 [outrageous government conduct is needed to make out a due process violation for breach of the lawyer-client privilege; this requires proof that the government objectively knew a lawyer-client relationship existed between the defendant and its informant, deliberately intruded into that relationship, and defendant was prejudiced as a result]; *U.S. v. Voigt* (3d Cir. 1996) 89 F.3d 1050, 1069 [no outrageous conduct found in part because there was no proof the lawyer-informant acted at the behest of government agents]; *Marshank, supra,* 777 F.Supp. at p. 1524 [outrageous government conduct found, and indictment properly suppressed, where government agents actively collaborated with a lawyer to build a case against the lawyer's client, the lawyer participated in the government's investigation, the government knowingly assisted the lawyer in violating the attorney-client privilege, then hid the violation from the court].) It also appears consistent with the standards for determining whether there has been improper government intrusion into the attorney-client privilege for purposes of a Sixth Amendment right to counsel violation. (See *Clutchette v. Rushen, supra,* 770 F.2d at p. 1472 [where the police were "entirely passive," did not initiate contact with the informant, did not encourage her to turn over privileged documents, and the informant acted voluntarily, no Sixth Amendment violation occurred].)

Appellants contend that *White* cannot be construed to require evidence of government misconduct because the Seventh Circuit held that no breach of the lawyer-client privilege occurred. As noted, while that was the court's initial holding, it also held that no due process violation occurred because there had been no government complicity in Center's breach of the privilege. Appellants do not address that portion of the *White* decision.

---

[7] This is the source of our earlier assumption that *White* involved the Fifth Amendment's due process clause as it related to breaches of the attorney-client privilege.

Appellants also contend that *White*'s original directions on remand—which led to the district court's evidentiary hearing—somehow indicate that any use of privileged information by the government is enough to make out a constitutional violation. In its remand order, the Seventh Circuit said it could avoid reaching any constitutional issues if the government did not use any privileged information and directed the lower court to make findings on that issue. The Seventh Circuit also directed the district court to look into the issues of government complicity and prejudice to the defendants from any breach of the attorney-client privilege. (*White, supra,* 970 F.2d at p. 329.) Appellants have somehow cobbled these statements together to contend that, under *White,* any use of privileged documents by the government would amount to a constitutional violation. Their contention ignores not just *White*'s language to the contrary—focusing on whether the government procured the breach or directed the lawyer to find certain documents—but also the other decisions cited *ante* holding the defendant must show affirmative government misconduct before a due process violation will be found.

Synthesizing the federal decisions cited *ante,* we conclude that in order to make out a Fifth Amendment due process violation against the government for obtaining a search warrant based on privileged lawyer-client information, a criminal defendant must show that: (1) the government objectively knew a lawyer-client relationship existed between the defendant and its informant; (2) the government deliberately intruded into that relationship; and (3) the defendant was prejudiced as a result. (*Kennedy, supra,* 225 F.3d at pp. 1194–1195.) That the police are mere passive recipients of privileged information, then act on that information, is not enough to satisfy the second element of deliberate intrusion.[8] Instead, some level of outrageous conduct, such as actively instigating or orchestrating a lawyer's breach of the attorney-client privilege, must occur.[9] (*Ibid.; U.S. v. Voigt, supra,* 89 F.3d at p. 1069; *White, supra,* 970 F.2d at pp. 333–334, 336.) This rule is applicable to our state courts through the due process clause of the Fourteenth Amendment to the United States Constitution. (*Lee v. City of Los Angeles* (9th Cir. 2001) 250 F.3d 668, 687; *Morgan v. Woessner* (9th Cir. 1993) 997 F.2d 1244, 1255.)

Our review of the evidence given both in camera and in open court shows no government misconduct here. The sheriff's affidavit of probable cause submitted in support of the search warrant states that the informant contacted the deputies, and that, based on information provided by the informant, they were independently led to other evidence and witnesses. During the March 21, 2003, in camera hearing held in connection with Donna's motions, a deputy testified that the informant contacted him and provided information. The deputy never directed the informant about how to provide information.

---

[8] The first and third elements are not at issue here and we need not discuss them.

[9] We will sometimes refer to such conduct as procuring a breach of the privilege.

During the March 26, 2004, open court hearing on Edward's motions, the deputy testified that the informant initiated contact with him. They had from 10 to 40 phone conversations, and, of those, the informant placed from 80 to 90 percent of the calls. Under cross-examination by Edward's lawyer, the deputy said he never asked the informant to act as his agent, never asked the informant to get any information for him, and never indicated to the informant that it would be helpful to have certain specific information. When that hearing continued in camera, the deputy testified that the informant had contacted him, and that he had never spoken with the informant before then. The informant provided him information, which the deputy investigated and corroborated. If that informant were Elizabeth, nothing in the record even remotely suggests government misconduct in procuring information from her. (See *U.S. v. Voigt, supra,* 89 F.3d at p. 1069 [no due process violation in part because the lawyer-informant did not act "at the behest of government agents"].) Instead, the deputies were no more than passive recipients of information that was voluntarily supplied. As a result, no due process violation occurred in obtaining the search warrant or the evidence derived from that warrant.

### C. The Statutory Privilege, Standing Alone, Does Not Permit the Search Warrant to Be Quashed

Finally, appellants contend that the statutory privilege by itself (Evid. Code, § 952) provides a proper basis for quashing the warrant and suppressing its derivative evidence. We disagree.

As discussed earlier, the attorney-client privilege is testimonial and evidentiary in nature. Such privileges frustrate the fundamental principle that the public has a right to all available evidence and must be strictly construed to the limited extent that excluding relevant evidence serves a greater public good. (*People v. Thompson* (1982) 133 Cal.App.3d 419, 427–428 [184 Cal.Rptr. 72].) As a testimonial or evidentiary privilege has no direct bearing on the process by which the police obtain information to support the determination of probable cause, evidence properly considered at the probable cause stage may still be excluded at trial. Conversely, it is inappropriate to apply the rules of evidence as a criterion to determine probable cause. (*Brinegar v. United States* (1949) 338 U.S. 160, 173–174, fn. 12 [93 L.Ed. 1879, 69 S.Ct. 1302].)[10]

---

[10] Appellants contend that, under *Crawford v. Washington* (2004) 541 U.S. 36 [158 L.Ed.2d 177, 124 S.Ct. 1354], allowing the police to use the informant's statement at a motion to suppress hearing violates their Sixth Amendment rights to confront and cross-examine the witnesses against them. That contention was rejected in *People v. Martinez* (2005) 132 Cal.App.4th 233, 242 [33 Cal.Rptr.3d 328]. (See also *People v. Hobbs* (1994) 7 Cal.4th 948, 968 [30 Cal.Rptr.2d 651, 873 P.2d 1246] (*Hobbs*).)

In *People v. Morgan* (1989) 207 Cal.App.3d 1384 [255 Cal.Rptr. 680] (*Morgan*), the court affirmed the denial of a pretrial motion to suppress an arrest warrant for lack of probable cause based on a claimed violation of the marital communications privilege. (Evid. Code, § 980.) Relying on *Brinegar v. United States, supra,* 338 U.S. 160, the court held that "[t]he rules of evidence applicable at trial do not apply in determining probable cause for arrest." (*Morgan, supra,* at p. 1389.) The court in *Nickel v. Hannigan* (10th Cir. 1996) 97 F.3d 403, 409, applied Kansas law to conclude that a violation of that state's lawyer-client privilege did not provide grounds to suppress evidence obtained from the violation. A Florida state court reached the same result on similar facts in *State v. Sandini* (Fla. Dist. Ct. App. 1981) 395 So.2d 1178 (*Sandini*). In that case, the police obtained a search warrant based on information voluntarily provided by a lawyer, in breach of the attorney-client privilege. The prosecution appealed from a trial court order suppressing the evidence. Although the privileged information could be excluded at trial, the *Sandini* court recognized that the privilege should be narrowly construed to prevent obstruction of the truth. Therefore, information derived from a breach of the lawyer-client privilege could be used to establish probable cause for a search warrant. The client's remedy for that breach was to sue for damages or initiate State Bar disciplinary proceedings. "If both of these possibilities are insufficient to deter violations of the privilege, certainly a rule of exclusion would have little additional deterrent effect. As a matter of practicality in most cases the attorney will have little interest in whether or not the evidence is excluded." (*Id.* at p. 1181.)[11]

 We find persuasive the reasoning of *Sandini, Morgan,* and the various federal decisions mentioned *ante.* Where a search warrant is obtained based on information provided to the police in breach of the lawyer-client privilege, the privilege by itself does not provide a "fruit of the poisonous tree" type remedy absent the sort of governmental misconduct needed to establish a constitutional violation. (See *U.S. v. Marashi* (9th Cir. 1990) 913 F.2d 724, 731 [no court has ever applied the fruit of the poisonous tree doctrine to violations of evidentiary privileges].) While appellants contend that tort damages and State Bar discipline would provide them with at best a pyrrhic victory from behind bars, that does not justify punishing the public or law enforcement when no constitutional violation has occurred.[12]

---

[11] The *Sandini* court also held that no violation of the Fourth Amendment's protections against unreasonable search and seizure occurred because the police had been mere passive recipients of the information and acted upon it, precluding a finding of police misconduct. (*Sandini, supra,* 395 So.2d at p. 1180.) No Sixth Amendment violation occurred because charges had not yet been filed at the time of the lawyer's breach. (395 So.2d at p. 1181.)

[12] Although we recognize that appellants may choose to file a civil suit for malpractice, breach of fiduciary duty, and other torts, the validity of such claims is not before us, and we

### 2. *An In Camera Hearing Is the Proper Way to Review a Motion Challenging a Search Warrant on the Grounds the Police Procured a Breach of the Attorney-client Privilege*

Appellants contend the trial court erred by holding in camera hearings when considering their motions to reveal the informant's identity, quash the search warrant and suppress the evidence. Resolution of this issue turns on our exegesis of both the statutory law concerning the disclosure of the identity of confidential police informants as well as the common law progenitors of those statutes. After discussing the history and boundaries of the informant's privilege, we will then proceed to examine how the privilege applies when a defendant seeks to traverse a search warrant based on privileged information obtained from the defendant's lawyer through unlawful police conduct.

#### A. *The Common Law Privilege*

The Supreme Courts of both California and the United States long ago recognized that the government held a privilege against disclosing the identity of police informants. The primary policies served by this privilege are twofold: to encourage citizens to report crimes regardless of their motives for doing so and to avoid inhibiting law enforcement's necessary use of professional informants. (*McCray v. Illinois* (1967) 386 U.S. 300, 308–309 [18 L.Ed.2d 62,87 S.Ct. 1056] (*McCray*); *People v. Gonzales* (1955) 136 Cal.App.2d 437, 441 [288 P.2d 588], disapproved on other grounds by *People v. McShann* (1958) 50 Cal.2d 802, 808 [330 P.2d 33].) The scope of the privilege is limited by its underlying purpose. Where disclosure of the contents of a communication will not tend to reveal an informant's identity, the contents are not privileged. When the informant's identity has been disclosed, the privilege no longer applies. The privilege is also limited by notions of fundamental fairness. Where disclosure of an informant's identity, or the contents of his communications, is relevant and helpful to an accused's defense or to a fair determination of a cause, the privilege must yield. The trial court may order disclosure and, if the government refuses, may dismiss the action. (*Hobbs, supra,* 7 Cal.4th at pp. 958–959, citing *Roviaro v. United States* (1957) 353 U.S. 53, 60–61 [1 L.Ed.2d 639, 77 S.Ct. 623].) Whether or not disclosure is relevant to a defense or a fair determination of a cause turns largely on whether the informant is also a material witness on the issue of guilt. (*Hobbs,* at p. 959.)

If the informant was not a material witness on the issue of guilt and the defendant seeks to learn his identity in order to challenge the legality of a

express no opinion on them. Likewise, we do not comment on the propriety of any State Bar proceedings which appellants might elect to initiate.

facially valid search warrant based on information provided by the informant, the informant's identity need not be disclosed. The rationale for this exception is based on the fact that a warrant is issued by a neutral magistrate. Because the magistrate will issue a warrant only upon a showing of probable cause, and has the power to question the informant if he sees fit, there is adequate protection against police abuse. (*Hobbs, supra,* 7 Cal.4th at p. 960, citing *People v. Keener* (1961) 55 Cal.2d 714, 722–723 [12 Cal.Rptr. 859, 361 P.2d 587], overruled on another point in *People v. Butler* (1966) 64 Cal.2d 842, 844–845 [52 Cal.Rptr. 4, 415 P.2d 819].)

## B. *The Statutory Privilege*

The common law privilege for an informant's identity has been codified in Evidence Code section 1041.[13] (*Hobbs, supra,* 7 Cal.4th at p. 960.) Section 1041 provides, in relevant part: "[A] public entity has a privilege to refuse to disclose the identity of a person who has furnished information [in confidence to a law enforcement officer] . . . purporting to disclose a violation of a law of the United States or of this state or of a public entity in this state . . . if . . . (2) Disclosure of the identity of the informer is against the public interest because there is a necessity for preserving the confidentiality of his identity that outweighs the necessity for disclosure in the interest of justice; . . ."

If the People successfully invoke the informant's privilege, section 1042, subdivision (a) states that the trial court must then "make such order or finding of fact adverse to the public entity bringing the proceeding as is required by law upon any issue in the proceeding to which the privileged information is material." Section 1042, subdivision (b) states, in relevant part: "[W]here a search is made pursuant to a warrant valid on its face, the public entity bringing a criminal proceeding is not required to reveal to the defendant official information or the identity of an informer in order to establish the legality of the search or the admissibility of any evidence obtained as a result of it." Therefore, this subdivision codifies the common law rule that disclosure of an informant's identity is not required to establish the legality of a search made pursuant to a warrant. (*Hobbs, supra,* 7 Cal.4th at p. 961.) Section 1042, subdivision (d) provides that if the defendant demands disclosure of the informant's identity because the informant is a material witness on the issue of guilt, the court must hold an in camera hearing which excludes the defendant and his lawyer. If nondisclosure is upheld, the transcript of the hearing and any evidence presented at the hearing must be sealed unless, based on that

---

[13] All further section references are to the Evidence Code.

evidence, the trial court concludes there is a reasonable possibility that nondisclosure might deprive the defendant of a fair trial.[14]

### C: *Development of Case Law Exceptions Allowing Limited Discovery*

██ A corollary to the informant's privilege in sections 1041 and 1042 is a general ban on the disclosure of communications that might tend to reveal the informant's identity. This prohibition constitutes an exception to the general rule that the contents of a search warrant, including its supporting affidavits, become public record. As a means of balancing the People's privilege to protect the identities of its informants against a defendant's due process right of reasonable access to information that might permit a challenge to the validity of a search warrant, the courts have fashioned several procedures. These include redacting or sealing information from a search warrant that might tend to reveal an informant's identity. Problems arise when the prosecution tries to extend those procedures to all or most of a search warrant affidavit, leaving a defendant unable to determine whether a probable cause challenge should be made. (*Hobbs, supra,* 7 Cal.4th at pp. 963–964.)

In *Franks v. Delaware* (1978) 438 U.S. 154 [57 L.Ed.2d 667, 98 S.Ct. 2674] (*Franks*), the United States Supreme Court held that a defendant may challenge the veracity of the search warrant's affidavit due to police misconduct, but only upon a substantial preliminary showing that the affiant lied and that the remaining contentions in the affidavit are insufficient to establish probable cause. (*People v. Eid* (1994) 31 Cal.App.4th 114, 128, fn. 5 [36 Cal.Rptr.2d 835].) In *People v. Luttenberger* (1990) 50 Cal.3d 1 [265 Cal.Rptr. 690, 784 P.2d 633] (*Luttenberger*), our Supreme Court established a discovery procedure where a defendant seeks to mount a *Franks* challenge to a search warrant obtained through information from a confidential informant. The warrant affidavit in *Luttenberger* was not sealed and the defendant did not seek to learn the identity of the police informant. Instead, he wanted to obtain police records concerning the background and reliability of the informant to contest the veracity of the affidavit.

██ Because *Franks* did not involve a confidential informant, the *Luttenberger* court declined to apply the *Franks* requirement of a substantial preliminary showing of material falsity (*Franks, supra,* 438 U.S. at p. 169) as a condition to a hearing on the veracity of a search warrant affidavit where the police used a confidential informant.[15] Where a confidential informant was involved, absent some sort of discovery on the issue, a defendant would have

---

[14] Section 1042, subdivision (c) provides for hearings in open court when the informant provided information that was relied upon to conduct a *warrantless* search.

[15] The *Franks* court expressly declined to reach the issue of how to implement its ruling in cases involving confidential informants. (*Franks, supra,* 438 U.S. at p. 170.)

no meaningful opportunity to mount a *Franks* challenge and would be "seriously handicapped in his attempt to obtain an evidentiary hearing." (*Luttenberger, supra,* 50 Cal.3d at p. 18.) In order to accommodate the competing interests of the state and the defendant, the court fashioned a rule that allowed a defendant to obtain limited discovery of police records concerning a confidential informant as part of a *Franks* challenge to a search warrant: The defendant must make a preliminary showing that describes the information sought with some particularity and that is supported by a plausible justification. The defendant must offer some evidence casting reasonable doubt regarding either the existence of the informant or the truthfulness of the affiant's statements concerning the informant. Once that showing is made, the trial court has discretion to order an in camera review of the documents. If the court determines that the defendant's challenge is not supported, then the court should report only that. If the court determines that the information it reviewed tends to contradict material representations in the affidavit or constitutes material omissions from it, the court should order disclosure of the documents, but only after excising all information that might reveal the informant's identity. (*Luttenberger,* 50 Cal.3d at pp. 20–22, 24.)

▮ The *Luttenberger* rule was applied in *Hobbs, supra,* 7 Cal.4th 948, where, in order to mount a *Franks* challenge to a search warrant, the defendant sought disclosure of a search warrant affidavit that had been sealed to protect the identity of a police informant. After reviewing the common law and statutory bases for the informant's privilege, the *Hobbs* court approved of an in camera hearing to review the contents of a sealed search warrant affidavit in order to determine whether there was a reasonable probability that the search warrant affiant made material misrepresentations when obtaining the warrant. If not, the inquiry ends. If so, the prosecution is put to the choice of either consenting to disclosure of the documents as a prelude to a further evidentiary hearing, or to an order granting the defendant's motion to traverse the warrant. (*Hobbs,* at pp. 971–975.)

▮ The *Hobbs* court specified in great detail the procedure that should be followed before ruling on a *Franks* motion in these circumstances. Upon a properly noticed motion to quash or traverse the search warrant, the trial court should conduct an in camera hearing pursuant to section 915, subdivision (b).[16] The first step is to determine whether sufficient grounds exist for maintaining the confidentiality of the informant's identity, followed by a determination whether the affidavit or any part of it was properly sealed and whether additional portions may be redacted and divulged. The prosecutor

---

[16] Section 915, subdivision (b) provides that when a court is ruling on a claim of privilege under sections 1041 and 1042 and cannot do so without requiring disclosure of the assertedly privileged material, it may conduct an in camera hearing where the information is disclosed to the court.

may be present, and defendant and his lawyer are excluded unless the prosecutor consents to their presence. Defense counsel should be allowed to submit written questions of a reasonable length, which the trial judge will then ask of any witnesses called to testify at the proceeding. Because the defendant may be unable to specify what materials the court should review in camera, the court must take it upon itself to examine the affidavit for inconsistencies or insufficiencies regarding the showing of probable cause, and inform the prosecution of the materials or witnesses it requires. These will likely include relevant police reports and other information concerning the informant and the informant's reliability. Because the defendant's access to the essence of the affidavit is restricted, the trial court may also, in its discretion, find it necessary to call other witnesses it deems necessary to rule upon the issues. If the informant is called as a witness, steps may be taken to protect his identity, including holding the in camera hearing away from the courthouse. (*Hobbs, supra,* 7 Cal.4th at pp. 972–973.)

The *Hobbs* court cited to *People v. Seibel* (1990) 219 Cal.App.3d 1279, 1300 [269 Cal.Rptr. 313] (*Seibel*), when stating the rule that the documents the trial court reviewed in camera might be disclosed if the trial court found a reasonable probability that the search warrant affiant had made material misrepresentations. (*Hobbs, supra,* 7 Cal.4th at pp. 974–975.) The cited portion of *Seibel* endorsed such disclosures, but only after excising all information that might tend to reveal the informant's identity. Thus, in both *Hobbs* and *Luttenberger*, even though a defendant is entitled to conduct discovery in order to mount a *Franks* challenge, the identity of the confidential informant will still remain hidden, even if a *Franks* violation has occurred.

### D. *Appellants Were Entitled to No More Than an In Camera Hearing*

As mentioned at the beginning of this section, we must decide what type of hearing is required when a defendant seeks to traverse a search warrant and learn the identity of a confidential police informant, contending that the police were able to secure that warrant based on information obtained from the defendant's lawyer by procuring a breach of the lawyer-client privilege. We hold that the rationale behind the discovery procedures established in *Hobbs* and *Luttenberger* is sufficiently analogous, calling for their application in these circumstances. Even though we apply *Hobbs* and *Luttenberger* principles, we are mindful that those cases did not involve a defendant who had sought the identity of an informant.[17]

Respondent's supplemental briefs on this issue make four separate arguments. First, taking section 1042, subdivision (b) literally, respondent contends

---

[17] In *Hobbs*, the defendant originally sought the identity of the informant but, in the Supreme Court, the issues had narrowed to the release of information that would not reveal identity. (*Hobbs, supra,* 7 Cal.4th at p. 955.)

that appellants want to learn official information and the identity of an informer not on the issue of guilt or innocence but "in order to establish the legality of the search or the admissibility of any evidence obtained as a result of it." Accordingly, respondent argues that for reasons already given the prosecution was not required to reveal any such information. Second, the district attorney contends that appellants could have called as witnesses both Elizabeth and the police officers involved in obtaining the search warrant, and questioned them about their conduct.[18] Third, the district attorney says that pursuant to section 915, subdivision (b), an in camera hearing was the proper vehicle by which to examine witnesses on this issue. Fourth, the Attorney General contends that the in camera review process fashioned by the *Luttenberger* and *Hobbs* courts should apply.

Appellants contend that their constitutional due process right against a procured breach of the lawyer-client privilege falls outside the scope and purpose of sections 1041 and 1042. Decisions such as *McCray, supra,* 386 U.S. at pages 308–309, state that the informant's privilege is designed to encourage citizens to report crimes. Because we should not encourage lawyers to breach the attorney-client privilege, appellants believe section 1041 does not apply here. They contend that section 1042 does not apply because that provision is designed for a *Franks* probable cause challenge based on claims that the police lied about material information when trying to get a search warrant issued. Here, appellants do not need to show the police lied.

Appellants acknowledge that there is no case law precedent on this issue, and ask us to adopt a rule that would permit an in camera hearing on one issue only: whether the confidential informant is in fact the defendant's lawyer. All other issues must be resolved in open court, they contend, with the witnesses subject to cross-examination by defense counsel. They argue that this is required for two reasons: First, because such a hearing is the only way to fully explore the other issues and ensure that a defendant's rights are fully protected; second, because an in camera hearing on the remaining issues would violate public policy by shielding a lawyer from his unethical conduct.[19]

 The fault line for our analysis lies between the full and open hearing advocated by appellants and the restrictive approach that respondent advances. We begin with this essential premise: If the police obtained a search warrant based on information from a confidential informant that resulted from procuring a breach of the attorney-client privilege, then the police have

---

[18] We presume this would occur either at the preliminary hearing or as part of a separate motion to traverse the warrant and suppress the evidence.

[19] As we have already observed, the present case does not require us to decide the discovery of information pendent to a civil action or State Bar proceeding against an offending lawyer.

violated the defendant's due process rights and the defendant is entitled to have the warrant traversed and any resulting evidence suppressed.[20]

We next consider the primary purpose of the rule that requires the courts to traverse a warrant and suppress any evidence obtained because the government procured a breach of the attorney-client privilege—to deter and punish police misconduct, not the faithless attorney. (See *U.S. v. Voigt, supra,* 89 F.3d at p. 1064 [noting that the rule against procured breaches of the attorney-client privilege has its genesis in cases based on outrageous law enforcement investigative techniques]; *United States v. Rogers* (9th Cir. 1985) 751 F.2d 1074, 1080 [lawyer's failure to abide by his ethical obligations when talking to the police does not transform the police investigation into government misconduct].) When the police procure a breach of the lawyer-client privilege, the remedy should be tailored to the injury suffered from the constitutional violation and should not unnecessarily infringe on competing interests. (*United States v. Rogers,* at p. 1078 [suppression of evidence is the preferred remedy, with dismissal of indictment reserved for the most extreme cases].)

In this sense, the due process violation at issue here is no different from the Fourth Amendment violations that motivated the *Franks* court. The essence of a *Franks* motion is to remedy police misconduct. (*People v. Eid, supra,* 31 Cal.App.4th at p. 128, fn. 5 [under *Franks,* a defendant may attack the veracity of a search warrant affidavit for police misconduct].) As the *Franks* court itself said when rejecting the notion that a defendant could never attack the veracity of a facially valid warrant, "a flat ban on impeachment of veracity could denude the probable-cause requirement of all real meaning." (*Franks, supra,* 438 U.S. at p. 168.) Because warrants must be issued upon probable cause, and be supported by affidavits made under penalty of perjury, that requirement "would be reduced to a nullity if a police officer was able to use deliberately falsified allegations to demonstrate probable cause, and, having misled the magistrate, then was able to remain confident that the ploy was worthwhile." (*Ibid.; Luttenberger, supra,* 50 Cal.3d at p. 9 [*Franks* rule was designed to prevent "searches based on false allegations by police officers [from going] unchallenged and unremedied."].)

 The in camera discovery procedures authorized by *Luttenberger* and *Hobbs* were designed to make the *Franks* remedy available in cases where a search warrant was obtained with the help of a confidential informant. (*Hobbs, supra,* 7 Cal.4th at pp. 971–972; *Luttenberger, supra,* 50 Cal.3d at pp. 17–18.) Just as *Franks* did not involve a confidential informant, the defendants in cases such as *Kennedy, supra,* 225 F.3d 1187, *U.S. v. Voigt, supra,* 89 F.3d 1050, and *White, supra,* 970 F.2d 328, somehow knew that their lawyers had disclosed privileged information to the police and issues con-

---

[20] Respondent concedes this in its supplemental brief on the issue.

cerning confidential informants were not raised. And just as special discovery proceedings were found essential in both *Hobbs* and *Luttenberger* in order to effectuate a defendant's Fourth Amendment *Franks* rights when the police use a confidential informant, we believe they are essential here as well to protect a defendant's due process rights.[21]

Luttenberger, involved an in camera review of the police records specified by defense counsel. (*Luttenberger, supra,* 50 Cal.3d at p. 24.) Under *Hobbs,* as discussed in detail earlier, the defendant may specify questions to be asked and documents that should be examined, while the court is given the responsibility of conducting a thorough inquiry and examination of any necessary witnesses. In authorizing this procedure, the *Hobbs* court explicitly rejected the contention that the trial courts were ill equipped to conduct such an inquiry and that only an open and fully adversarial hearing would suffice. " 'Insofar as use of sealed affidavits is unavoidable, it is not unusual or inappropriate for the "burden" of protecting citizens' rights to fall upon our judiciary, and trial courts, as always, retain broad discretion in weighing the government's interests against defendant's rights.' " (*Hobbs, supra,* 7 Cal.4th at p. 970, quoting *Seibel, supra,* 219 Cal.App.3d at p. 1298.) Noting that the Legislature expressly deemed the trial courts capable of making an in camera evaluation of a confidential informant's materiality as a witness as to guilt or innocence under section 1041, the court said "[i]t would be anomalous to conclude that a trial court . . . could not likewise competently evaluate the necessity for sealing all or part of a search warrant affidavit on such a claim of privilege, take whatever further actions may be necessary to ensure full public disclosure of the remainder of the affidavit, and review all the relevant materials in camera to determine whether they will support defendant's challenges to the search warrant." (*Hobbs,* at p. 971.)

We see no reason not to apply a variant of those procedures to motions involving claims that a search warrant was obtained because the police procured a breach of the attorney-client privilege. At bottom, both types of motions require factual findings by the trial court into claims of police misconduct. Given the same mandate to conduct a vigorous in camera

---

[21] There is one critical difference between a *Hobbs-Luttenberger* hearing and cases involving a breach of the lawyer-client privilege: under *Hobbs* and *Luttenberger,* even if the trial court quashes a warrant, their in camera discovery procedures still require protection of a confidential informant's identity. (*Hobbs, supra,* 7 Cal.4th at pp. 974–975; *Luttenberger, supra,* 50 Cal.3d at p. 24.) In cases such as this, even with an in camera hearing, if a trial court traverses a warrant because it finds that the police procured a breach of the attorney-client privilege, the identity of the lawyer as the confidential informant will necessarily be disclosed. To that extent, we believe the informant's privilege must yield. If not, then searches based on police misconduct by way of procured breaches of the lawyer-client privilege would go unremedied and unchallenged simply because the police designated the lawyer as a confidential informant. (*Franks, supra,* 438 U.S. at p. 168; *Luttenberger, supra,* 50 Cal.3d at p. 9.)

proceeding described in *Hobbs, supra,* 7 Cal.4th at pages 972–973, we believe the trial courts can adequately protect a defendant's rights while taking steps to safeguard the confidentiality of police informants to the greatest extent possible.[22] Because the trial courts here conducted in camera hearings and, as we explained in part 2, *ante,* correctly concluded no police misconduct occurred, there was no error.

## DISPOSITION

For the reasons set forth above, the judgment as to Donna Navarro is affirmed. Edward Navarro's petition for a writ of prohibition or mandate is denied, our order to show cause is discharged, and the stay of proceedings in his case is vacated.

Cooper, P. J., and Boland, J., concurred.

Petitioner's petition for review by the Supreme Court was denied June 14, 2006, S143176.

---

[22] The parties have not asked us to determine what type of showing is necessary to require an in camera hearing, whether such a showing was made by appellants, or how such a hearing should be conducted, so we leave those issues for another day and another court. We assume that a specific, factual showing similar to that in *Luttenberger, supra,* 50 Cal.3d at pages 20–22 must be made. Once that showing is made, we believe a trial court will likely follow this line of inquiry: First, was the confidential informant the person defendant claims acted as his lawyer and breached the lawyer-client privilege? Second, if so, did a lawyer-client relationship exist as to the particular matter at issue in the criminal case against the defendant? (*Holm v. Superior Court* (1954) 42 Cal.2d 500, 507 [267 P.2d 1025], overruled on other grounds by *Suezaki v. Superior Court* (1962) 58 Cal.2d 166, 173 [23 Cal.Rptr. 368, 373 P.2d 432] [the privilege attaches to communications made in confidence pursuant to an attorney-client relationship with respect to the particular matter]; *People v. Hall* (1942) 55 Cal.App.2d 343, 356–357 [130 P.2d 733] [though a lawyer represents a client as to one matter, he may still testify about entirely different matter as to which there was no attorney-client relationship].) Third, if there was an attorney-client relationship as to the particular matters involved in the criminal charge, did the lawyer divulge privileged information? Fourth, if so, did the government procure the breach, under the three-point test we have derived from decisions such as *Kennedy, supra,* 225 F.3d at pages 1194–1195? A negative answer to any one of these questions would necessarily lead to a finding that no Fifth Amendment violation occurred.